## IN RE HAROLD R. DURANT, A MEMBER OF THE NEW HAVEN COUNTY BAR.

Third Judicial District, New Haven, June Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

An attorney at law who is charged with misconduct·which unfits him to continue in the practice of his profession is entitled to a fair and dispassionate hearing and to a reasonable exercise of the judicial discretion; but his relation to the court as one of its officers,.and the character and purpose of the inquiry, are such, that unless it clearly appears that his rights have been invaded or denied in some substantial way, the determination of the trial court will not be set aside upon appeal.

In the present case a wife who was opposed to a divorce but insisted that her husband should furnish her adequate support, applied to the respondent, an attorney at law, for that purpose, who induced her to permit him to engage a detective to secure evidence of her husband's infidelity, upon his representation that the procurement of such evidence would lead to an advantageous settlement of her suit for support. The detective, however, obtained no· evidence, and the attorney then suggested to him and to a Mrs. *D* that the latter should solicit and entice the husband to commit adultery with her under such circumstances as would make the detective a witness of the act; but this scheme proved futile. Thereupon the detective and Mrs. *D* were persuaded by the respondent to represent to his client that her husband had been criminally intimate with Mrs. *D*, and the client believed the representations so made. Subsequently the detective, in a deposition taken by the husband in the suit against him for support, and Mrs. *D* upon the trial of that action, testified to these occurrences, and the latter was cross-examined in the interest of the respondent, who was present during a portion at least of the time she was testifying. Upon disbarment proceedings based upon the foregoing misconduct of the respondent, it was *held:*—

1. That the deposition of the detective was admissible, not as evidence of the truth of its statements, but as tending to show a consciousness of guilt upon the part of the respondent in the efforts which, it appeared, had been made by him to intimidate the deponent and induce him to retract his testimony.
2. That the testimony of Mrs. *D*, since deceased, was relevant and admissible, inasmuch as the respondent was present at that trial, heard her damaging disclosures, and had an unrestricted opportunity for cross-examination, even if, as he contended, the cross-examination then made was not made on his behalf.

In re Durant.

3. That there was no error in excluding evidence offered to discredit the testimony of the detective, inasmuch as his deposition was not admitted as substantive evidence of the truth of its revelations.

Evidence of the reputation of a witness as to "morality," is not admissible to affect his credibility.

The test which experience has established as the proper one to be applied in determining whether the testimony of a deceased witness, given on a former trial, is admissible, is whether the person against whom the decedent's testimony is now offered had opportunity for cross-examining the decedent upon the former trial

Argued June 6th—decided July 30th, 1907.

COMPLAINT by a committee of the bar of New Haven County charging the respondent, an attorney at law, with professional misconduct, and asking for his disbarment, brought to and tried by the Superior Court in New Haven County, *Shumway, J.;* facts found and judgment rendered permanently disbarring the respondent from practice before the courts of this State, from which he appealed. *No error.*

The respondent, Harold R. Durant, was an attorney at law having his office in Waterbury. A Mrs. Lathrop, who was a family friend, claimed that her husband, then being a man of property with a considerable income, had left her in poor health and without means of support; and she applied to the respondent for professional advice and assistance in compelling her husband to provide her suitable support. Judge Burpee, under whom the respondent then held an appointment as prosecuting attorney of the City Court of Waterbury, was the attorney for Mr. Lathrop. The respondent told Mrs. Lathrop that by reason of this relation and an understanding he had with Judge Burpee he could not act openly or in court as her attorney. He, however, consented to advise with and act for her as her attorney in the matter, not appearing openly or in court in that capacity. By his advice other counsel was employed, who thereupon instituted civil proceedings for Mrs. Lathrop against her husband to secure the desired support.

From the outset Mrs. Lathrop informed the respondent and her other attorney that she was opposed to a di-

vorce on principle, and did not desire under any circumstances to procure one from her husband. In the course of the early consultations with Mrs. Lathrop, the respondent informed her that her husband had been unfaithful to her, and that he was sustaining illicit relations with other women. Mrs. Lathrop resented this charge against her husband, and informed the respondent that she did not believe it. He thereupon, by his representations, induced her to believe that if sufficient money could be procured to employ a detective, evidence of her husband's infidelity could be readily obtained, and that when her husband found that such evidence had been procured, he could be readily induced to make an advantageous settlement with her, without further proceedings in court; and acting under the respondent's advice, Mrs. Lathrop procured a friend to advance to her $500, which she delivered to the respondent for the purpose aforesaid. The respondent thereon procured from New York one Murphy to act as a detective for the procuring of evidence against Mr. Lathrop as stated. Murphy spent several weeks under the immediate direction of the respondent in an endeavor to obtain evidence of improper conduct on the part of Lathrop, but without success. Following this failure, of which the respondent was fully advised, the respondent proposed to Murphy and one Mrs. Delkescamp, a married woman of Waterbury, that the latter should solicit and entice Lathrop to criminal intercourse with her at such time and place and under such circumstances as would enable Murphy to be a witness of the act. This proposition was agreed to by them, and Mrs. Delkescamp began to exert her wiles upon Lathrop in co-operation with Murphy and under the direction of the respondent. The scheme was barren of desired results. Afterward, and with knowledge of the failure of Mrs. Delkescamp's efforts, the respondent proposed to her and Murphy that as a personal favor to him they should state to or in the presence of Mrs. Lathrop that her husband had been criminally intimate with Mrs. Delkescamp, and this they consented to

do.   Soon afterward the respondent arranged an interview with Mrs. Lathrop, in his office, and at that interview and in his presence both Mrs. Delkescamp and Murphy made statements to Mrs. Lathrop that were intended to lead her to believe, and did in fact lead her to believe, that her husband and Mrs. Delkescamp had had criminal relations; and again later induced Murphy and Mrs. Delkescamp to repeat in his presence the substance of the same statements to Mrs. Lathrop and her other attorney who was then conducting her action for support.   These statements were procured by the respondent to be made to Mrs. Lathrop in order to induce her to believe them and to act thereon as true.   Subsequently Mrs. Delkescamp informed the respondent that she would not repeat her said statement in court or elsewhere.

Later the relations between the respondent and both Murphy and the Delkescamp woman became strained, and information came to the defendant's counsel in the Lathrop case, which was still pending, of what had been done, said information coming indirectly from Murphy, and directly from Mrs. Delkescamp, who sought him out and told her story.   Shortly thereafter, pursuant to a notice to take depositions, that of Murphy was in part taken in New York City, Mr. Rogers being present as attorney to represent Mrs. Lathrop.   The direct examination was concluded and the cross-examination begun, when at the close of the first day an adjournment for six days was taken.   At this time counsel for both sides were present, but the witness failed to appear.   A further adjournment was taken, with the stipulation that the taking of the deposition should be continued as soon as the witness could be produced.   The absence of Murphy was caused by the conduct of the respondent, as hereinafter recited.   A few days later Mr. Lathrop's counsel having received assurances that he would appear to complete his deposition, notice was accordingly given to Mrs. Lathrop's counsel to be present at a time named.   At that time Murphy appeared, but was induced by those acting in behalf of Mrs. Lathrop and the respond-

ent to go away, which he did. Subsequently he appeared before the magistrate, read the transcript of his deposition as given on said first day, and subscribed and made oath to it.

Immediately after the conclusion of the testimony of Murphy on the first day, Mr. Rogers returned to Waterbury and informed the respondent of the nature and substance of Murphy's testimony, whereupon the respondent went to New York and procured detectives and a policeman of the New York police department to accompany him, and they called upon Murphy at his home, at one o'clock in the morning, finding him in bed, ill. The respondent and the detectives, with language calculated to intimidate, then upbraided Murphy for having testified as he had in his deposition, and endeavored by intimidation to induce him to retract his testimony, so far as it related to the respondent. On the following day the respondent, accompanied by police officers, again visited Murphy, and again endeavored by intimidation to induce him to retract his testimony, either by appearing and testifying on further cross-examination in opposition to his former testimony, or by signing a statement to the effect that his testimony was untrue, but were unsuccessful. By reason of the conduct of the respondent and his friends in New York, Murphy soon thereafter removed to Jersey City, and for the like reason failed to appear before the notary pursuant to the adjournment.

Soon after Murphy's deposition was signed and sworn to as aforesaid it was returned to the assistant clerk of the Superior Court at Waterbury ; and from that time forward, through detectives, policemen, and other personal representatives, the respondent endeavored to induce Murphy, by intimidation and bribery, to retract and contradict his testimony given in said deposition. Such efforts were continued down to a period subsequent to the filing of the complaint of the grievance committee in this case.

After the filing of the Murphy deposition, Judge Burpee wrote the respondent, advising him that if Murphy's

statement therein relating to the respondent's conduct should be corroborated or not pretty thoroughly contradicted during the trial, he should feel it his duty to lay the matter before the grievance committee of the bar as soon as the case should be finished.

The Lathrop case was referred to John P. Kellogg, Esq., as a committee to hear the evidence and report the facts. This hearing consumed several days. Prior to the reference John O'Neill, Esq., succeeded the former counsel of record for Mrs. Lathrop.

Prior to the hearing before the committee, the respondent was well aware of the character of the Murphy deposition, its bearing upon his own conduct, that the Delkescamp woman was expected to testify for the defendant, and the nature of the evidence which she was likely to give. He was in consultation with Mr. O'Neill in respect to that evidence in its relation to him and his interests, and the proper course for him to pursue when she should testify. He also visited Mr. Kellogg, and, informing him that he, the respondent, anticipated that evidence would be given which reflected upon him, asked if he might be permitted to be present. Mr. Kellogg advised him that he, Mr. Kellogg, would have no objection to his being present and being heard.

Mrs. Delkescamp's testimony occupied parts of three days. Her statements related to her employment by the respondent, her action thereunder, the respondent's knowledge thereof and participation therein, her subsequent false accusations to Mrs. Lathrop and the latter's counsel of record, and the respondent's procurement thereof and participation therein, in substance as hereinbefore recited. She was exhaustively cross-examined upon all these matters by Mr. O'Neill, the plaintiff's counsel, to whom the respondent had entrusted his interests. The respondent was personally present during her direct examination and some portion of the cross-examination, and had ample opportunity to examine the witness as he desired.

The court reached the following conclusions upon the

evidence: "That the respondent was acting as the attorney for Mrs. Lathrop in her effort to compel her husband to support her; that he entered into a conspiracy with Mrs. Delkescamp and Murphy to engage Mr. Lathrop in adultery with Mrs. Delkescamp; that pursuant to the arrangement between them Mrs. Delkescamp attempted to entice Mr. Lathrop to commit adultery with her, but did not succeed; that the respondent was cognizant of the progress of the attempts and efforts of Mrs. Delkescamp in the premises, and of her failure to accomplish the purposes aforesaid; that after knowledge of such failure the respondent proposed and arranged with Murphy and Mrs. Delkescamp to deceive Mrs. Lathrop as to the conduct of her husband with Mrs. Delkescamp, and to induce her to believe that her husband had been guilty of adultery with Mrs. Delkescamp in Waterbury; that pursuant to the agreement and conspiracy aforesaid, Murphy and Mrs. Delkescamp in the presence of the respondent represented and gave Mrs. Lathrop to understand, and induced her to believe, that her husband had committed adultery in Waterbury with Mrs. Delkescamp; that the respondent was present, acquiescing, aiding, and abetting in the deception of Mrs. Lathrop, and did nothing thereafter to advise Mrs. Lathrop of the real truth."

Upon the trial, the attorney for the State having offered evidence of the conduct of the respondent herein set out, which had for its object the inducement and intimidation of Murphy, to the end that the statements which he had made in his said deposition might be retracted, changed, contradicted, or suppressed, offered the same for the purpose of showing the character of the evidence he was thus seeking to suppress, and as, in connection with said conduct, indicative of guilt. Against objection it was admitted for the purpose indicated. It was neither offered nor admitted as of itself furnishing any evidence of the truth of the facts stated therein.

The facts already recited as to the testimony of Mrs. Delkescamp having been shown, and that she was then

In re Durant.

dead, a transcript of said testimony was offered and received against objection. Other rulings are sufficiently stated in the opinion.

*Stiles Judson*, for the appellant (Harold R. Durant).

*William H. Williams*, State's Attorney, for the appellee (the State).

PRENTICE, J. An attorney at law is an officer of court exercising a privilege or franchise to the enjoyment of which he has been admitted, not as a matter of right, but upon proof of fitness through evidence of his possession of satisfactory legal attainments and fair private character. *Fairfield County Bar* v. *Taylor*, 60 Conn. 11, 15, 22 Atl. 441; *Ex parte Garland*, 4 Wall. (U. S.) 333, 378; *Butchers Union Co.* v. *Crescent City Co.*, 111 U. S. 746, 763, 4 Sup. Ct. Rep. 652. For the manner in which this privilege or franchise is exercised he is continually accountable to the court, and it may at any time be declared forfeited for such misconduct, whether professional or nonprofessional, as shows him to be an unfit or unsafe person to enjoy the privilege conferred upon him and to manage the business of others in the capacity of an attorney. *Ex parte Wall*, 107 U. S. 265, 273, 304, 2 Sup. Ct. Rep. 569; *Ex parte Garland*, 4 Wall. (U. S.) 333, 378; *Ex parte Robinson*, 19 Wall. (U. S.) 505, 512; *Ex parte Brounsall*, Cowper, 829. The power to declare this forfeiture is a summary one inherent in the courts, and exists not to mete out punishment to an offender, but that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession. *Ex parte Bradley*, 13 Wall. (U. S.) 364, 374; *Fairfield County Bar* v. *Taylor*, 60 Conn. 11, 12, 22 Atl. 441; *Boston Bar Association* v. *Greenhood*, 168 Mass. 169, 46 N. E. 568; *Ex parte Brounsall*, Cowper, 829.

The action of the court in the exercise of this power is

judicial in its character, but the inquiry made is "in the nature of an investigation by the court into the conduct of one of its own officers, not the trial of an action or suit," and the order entered is but an exercise of the disciplinary jurisdiction which it has over such officers. *Fairfield County Bar* v. *Taylor*, 60 Conn. 11, 13, 15, 22 Atl. 441; *Ex parte Garland*, 4 Wall. (U. S.) 333, 378; *In re Hardwick*, L. R. 12 Q. B. 148, 149. The real question for determination, in such proceedings, is whether or not the attorney is "a fit person to be longer allowed the privileges of being an attorney." *Fairfield County Bar* v. *Taylor*, 60 Conn. 11, 16, 22 Atl. 441. Into its determination there naturally and necessarily enters a large measure of judicial discretion. *Fairfield County Bar* v. *Taylor*, 60 Conn. 11, 13, 22 Atl. 441; *Ex parte Burr*, 9 Wheat. (U. S.) 529, 530; *Ex parte Secombe*, 19 How. (U. S.) 9, 13; *Ex parte Wall*, 107 U. S. 265, 273, 2 Sup. Ct. Rep. 569; *In re Davies*, 93 Pa. St. 116, 121; *Miles* v. *Stevenson*, 80 Md. 358, 365. This discretion, however, is not an absolute one, so that an attorney may be removed from the bar without notice of the charges against him and an opportunity to be heard, or so that the power of disbarment may be exercised arbitrarily, despotically or at the pleasure of the court, or from passion, prejudice, or personal hostility. The power is rather one to be used with moderation and caution, and the discretion one to be reasonably exercised. The attorney is, in other words, entitled to a fair hearing or opportunity to be heard, and a fair determination of the question at issue, in the exercise of a sound judicial discretion. *Fairfield County Bar* v. *Taylor*, 60 Conn. 11, 14, 22 Atl. 441; *Ex parte Secombe*, 19 How. (U. S.) 9, 13; *Ex parte Burr*, 9 Wheat. (U. S.) 529, 531; *Ex parte Garland*, 4 Wall. (U. S.) 333, 378; *Ex parte Bradley*, 7 id. 364, 375.

In the absence of prescribed regulations the manner of the proceeding, so that it be without oppression or injustice, is for the court itself to determine. *Fairfield County Bar* v. *Taylor*, 60 Conn. 11, 14, 22 Atl. 441; *Randall* v. *Brigham*, 7 Wall. (U. S.) 523, 540.

It has been questioned by high authority whether an appeal or writ of error would lie from disbarment orders. *Ex parte Bradley*, 7 Wall. (U. S.) 364, 376; *Ex parte Robinson*, 19 Wall. (U. S.) 505, 513. In two cases this court has suggested a doubt upon this point and left the doubt unresolved. *Fairfield County Bar* v. *Taylor*, 60 Conn. 11, 22 Atl. 441; *In re Westcott*, 66 Conn. 585, 34 Atl. 505. In *O'Brien's Petition*, 79 Conn. 46, 63 Atl. 777, views as to the status of an attorney at law and his rights were expressed by us which lead quite inevitably to the conclusion that in this jurisdiction, as in many others, a disbarred attorney is entitled to have the proceedings which have resulted in his being deprived of the valuable right which he had formerly enjoyed, reviewed upon appeal, for some purposes at least. *Randall, Petitioner*, 11 Allen (Mass.) 472; *Winkelman* v. *People*, 50 Ill. 449; *In re Orton*, 54 Wis. 379, 11 N. W. 584; *Matter of Beggs*, 67 N. Y. 120; *Ex parte Trippe*, 66 Ind. 531; *Biggs Ex parte*, 64 N. Car. 202; *In re Crum*, 7 N. D. 316, 75 N. W. 257.

This conclusion appears to us to be the only sound and safe one. The fact that the court exercises a large measure of discretion and is in a position to most intelligently exercise it, furnishes no obstacle to a review to ascertain not only whether a reasonable discretion was used, but also whether the proceedings were regular and fair. We not infrequently inquire to see whether there has been an abuse of judicial discretion. *Selleck* v. *Head*, 77 Conn. 15, 17, 58 Atl. 224.

It does not follow, however, that the review which the court will make is one which will be permitted to take as wide a range, or assume the same character, as where the judicial action sought to be reviewed concerns the rights of parties as between themselves and into the determination of which the element of judicial discretion does not enter. On the contrary, there is every reason why, in a proceeding by which a court seeks to inform itself of the personal fitness of one of its own officers to continue in

that capacity, an appeal should not be entertained for the purpose of exacting from the court that compliance with technical rules, born of trial by jury, which are too often suffered to hedge about a trained trier of ordinary actions quite regardless of their purpose or spirit, or their substantial value under the existing conditions. *Leonard* v. *Gillette*, 79 Conn. 664, 669, 66 Atl. 502. We have already observed that an attorney whose fitness is challenged before the authority to which he owes and is responsible for the privileges he enjoys, has a right to an opportunity to be heard, a fair and dispassionate investigation, and a reasonable exercise of the judicial discretion; but his relation to the tribunal, and the character and purpose of the inquiry, are such, that unless it clearly appears that his rights have in some substantial way been denied him, the action of the court will not be set aside upon review. *Ex parte Burr*, 9 Wheat. (U. S.) 529, 530.

The action of the court in the present case may, however, be brought to the test of stricter standards without disclosing error. The facts found left the court no alternative but to enter an order of permanent disbarment. This his counsel concede. Its action upon which error is predicated is confined to rulings upon the admission of testimony. The chief grounds of complaint, if we may judge from the prominence given to them in the brief of counsel, arise from the admission of a deposition and a transcript of testimony which it is said furnished the substantial basis for the most damaging of the facts found. The damaging character of the matters contained in these papers, their relevancy to the issue before the court, and their importance upon that issue, are alike apparent. They were not taken in the proceedings against the respondent, but during the progress of the case whose history furnished the material upon which he was presented for disbarment. It is therefore claimed that they embodied what was, as to him, only hearsay testimony, which ought not to have been received.

Murphy's deposition was clearly admissible. The State's

Attorney had shown that immediately after this witness in the Lathrop case had given the evidence in question and the respondent had been informed of its character, the respondent took the action recited in the finding to intimidate, overawe, and corrupt the witness into a retraction of the testimony he had given, in so far as it related to the respondent, or to change it upon further or cross-examination, or to sign a contradictory statement. This conduct, which of itself would have furnished sufficient cause for removal from the bar, entitled the court to know what the witness' statements were which called forth this conduct, and rendered the statements admissible as tending to show a consciousness of guilt. 1 Wigm. on Evidence, §§ 267, 277, 278 ; *Commonwealth* v. *Webster*, 5 Cush. (Mass.) 295, 316 ; *Green* v. *Woodbury*, 48 Vt. 5, 6. The deposition was neither offered nor received as evidence of the truth of the facts therein stated, but only in connection with the respondent's said conduct and for its significance in that connection.

The offer of the transcript of the testimony of the deceased Mrs. Delkescamp brought the court into touch with the so-called hearsay evidence rule, as that of Murphy's deposition did not. The logically probative value of the matters therein is beyond question. If its reception in the proceedings against the respondent was improper, it must, therefore, have been by reason of some rule of the kind which Wigmore has denominated " superadded and abnormal ones," which make the admissibility of declarations of third persons elsewhere made, although under oath, depend upon their satisfying certain tests, in addition to that of relevancy, which tests are conceived to be all-important, in order that the possible weaknesses of such declarations may be revealed and their real value indicated to the trier as fully as may be. Such a rule is the hearsay one, and the tests which have had the approval of experience, as applicable to the evidence of a deceased witness in another trial, are confrontation and the opportunity for cross-examination open to the party against whom it is offered ; and cross-exami-

nation implies confrontation. Wigm. on Evidence, §§ 10, 1360, 1362, 1365 ; *Chapman* v. *Chapman*, 2 Conn. 347, 348. In the present case the court has found that the respondent had full opportunity in the former examination of Mrs. Delkescamp to cross-examine her in his interest, and availed himself of it. But it is said that the issues were not then the same as the present, and the parties not the same. The issues were substantially the same, and nothing more is necessary in that regard. The topics which were the subjects of examination, in so far as the witness' testimony was concerned, were the same as those under examination in the present proceedings, and her evidence had the same bearing upon and important relation to the issues in the two cases. Wigm. on Evidence, § 1387 ; 1 Greenl. on Evidence (16th Ed.), § 163*a*. The requirement of an identity of parties is only a means to an end. This end was attained when the defendant availed himself of the unrestricted opportunity to cross-éxamine Mrs. Delkescamp. He was then fully aware of the importance to him in his professional capacity of her damaging disclosures. He had been forewarned of what might be expected from her, that her assertions might furnish the basis for disbarment proceedings against him, and had had ample opportunity to prepare to put her statements to the test of such an examination as he might think desirable. Under such conditions, to now say that the tests which the law prescribes for his protection against the witness' then assertions, were not, for the purposes of such a disciplinary proceeding as that before us, fully satisfied, would be to dispense with common sense in the application of the rule invoked, and to lose sight of its spirit and purpose in a blind adherence to the letter of some attempted expression of it. Wigm. on Evidence, § 1377.

The respondent, however, insists that the finding ought to be corrected, so that it should disclose that Mr. O'Neill did not represent him, that the cross-examination made by that attorney was in no way in his behalf, and that no opportunity was in fact given him to cross-examine

the witness. Were the correctness of this contention conceded and the desired corrections made, it would then appear that the respondent—present when the damaging disclosures were made, having advised with counsel as to his proper course of conduct in respect thereto, having obtained from the committee a statement of his willingness that he, the respondent, be heard, and fully aware of the gravity of the situation—took no steps to challenge the truth of the disclosure by asking the privilege of examination, and let them pass in silence and unnoticed. Such conduct, in the presence of the witness' assertions, made it competent for the court to know the whole situation, and to draw therefrom such inferences of guilt of the charges made by the witness as it reasonably might. Wigm. on Evidence, § 173.

The court refused to permit the respondent to ask a question of a witness designed to elicit testimony that Mrs. Delkescamp's reputation as respects morality was bad. In this there was no error. *State* v. *Randolph*, 24 Conn. 363, 367; *Dore* v. *Babcock*, 74 Conn. 425, 430, 50 Atl. 1016. Such evidence, furthermore, would seem to have been quite superfluous, in view of the nature and purpose of the employment which the court finds that she accepted at the hands of the respondent.

Judge Burpee, counsel for the defendant in the Lathrop case and who, it was claimed, had been active in the present proceedings, was offered as a witness by respondent's counsel, and upon his direct examination was asked whether he had not kept in touch with Murphy since his deposition referred to was given, and paid him money to prevent the respondent's communication with him. These inquiries were claimed as tending to cast discredit upon said deposition. As it was not offered or received as of itself furnishing substantive evidence of the truth of Murphy's revelations therein, the credit to which the deponent was entitled was a matter of no importance. He had not been made to assume the position of a witness.

The respondent sought to show by a New York detect-

ive that Murphy had been arrested with burglar's tools upon him, that his occupation had been that of a burglar, and that his moral character was bad, but was prevented. These rulings are sufficiently supported by the considerations just noted.

The respondent claims that the finding should be corrected in several important particulars, some of which have been noticed. Our examination of the evidence has failed to disclose that any material fact has been found without justification, either in direct evidence or reasonable inference from such evidence.

There is no error.

In this opinion the other judges concurred.