**DISTRICT OF COLUMBIA BAR, Petitioner,**

**v.**

**Richard G. KLEINDIENST, Respondent.**

**No. S–37–75.**

District of Columbia Court of Appeals.

Argued June 12, 1975.

Decided Aug. 11, 1975.

Kelly, J., dissented and filed opinion in which Fickling and Gallagher, JJ., joined.

Gallagher, J. filed separate statement on denial of rehearing, in which Fickling, J., joined.

Fred Grabowsky, Washington, D. C., for petitioner.

Herbert J. Miller, Jr., Washington, D. C., for respondent.

Before REILLY, Chief Judge, and KELLY, FICKLING, KERN, GALLAGHER, NEBEKER and HARRIS, Associate Judges.

MEMORANDUM ORDER

PER CURIAM.

The Disciplinary Board of this court concluded, consistent with a report of a Hearing Committee, that respondent violated Disciplinary Rules 1–102(A)(4) and (5)[1] by virtue of misrepresentations and dishonest conduct prejudicial to the administration of justice. The Board found specifically that respondent "was guilty of direct and repeated misrepresentations in answering persistent inquiries about White House involvement in Justice Department litigation against ITT."

---

1. Disciplinary Rules 1–102(A)(4) and (5) provide:
   A lawyer shall not:
   \* \* \* \* \*

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.

The Board's quoted finding is correct. The evidence discloses that during Senate confirmation hearings on respondent's nomination as Attorney General of the United States, he expressly asserted that no effort had been made by anyone at the White House directed at influencing the Department of Justice in its conduct of antitrust litigation challenging mergers by International Telephone & Telegraph, Inc. with the Canteen Corporation, the Hartford Corporation, and the Grinnell Corporation. To the contrary, a tape-recorded telephone conversation between respondent and then-President Nixon reveals that respondent was ordered to "stay . . . out of [the case] . . . . Don't file the brief [in the Supreme Court]. . . . [D]rop the . . . thing."

We conclude that respondent did violate Disciplinary Rule 1–102(A)(4), and we deem it unnecessary to resolve the considerably more difficult question of whether his conduct also contravened subsection (5).

We turn then to the question of what disciplinary action to take. The Board adopted the recommendation of the Hearing Committee that a one-year suspension be imposed.[2] While the Board did not recommend more severe disciplinary action, we are free to consider that option, since the nature of the discipline imposed is a judgment independently to be made by this court. Through the conscientious efforts of the Hearing Committee and the Board, the relevant factual and judgmental considerations have been explored and ventilated, and our difficult way has been eased.

We start with a fundamental premise: The purpose of a disciplinary proceeding is to question the continued fitness of a lawyer to practice his profession. *In re Randolph*, 347 S.W.2d 91, 109 (Mo. 1961); *In re Black*, 228 Or. 9, 363 P.2d 206, 207 (1961).

Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but it is equally essential afterwards. *Selling v. Radford*, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585; *Matter of Durant*, 80 Conn. 140, 147, 67 A. 497, 10 Ann.Cas. 539. Whenever the condition is broken the privilege is lost. To refuse admission him for past offenses. The examination into character, like the examination into learning, is merely a test of fitness. To to an unworthy applicant is not to punish strike the unworthy lawyer from the roll is not to add to the pains and penalties of crime. The examination into character is renewed; and the test of fitness is no longer satisfied. For these reasons courts have repeatedly said that disbarment is not punishment. . . . [*In re Rouss*, 221 N.Y. 81, 84, 116 N.E. 782, 783 (1917).]

The distinction between fitness and punishment must be maintained in this delicate judgment. At the hearing on this matter, Bar Counsel scrupulously adhered to that notion so ably stated by Judge Cardozo in the *Rouss* opinion, *supra*. At this stage, we, like the Board and the Hearing Committee, do not lose sight of the need to avoid erosion of public confidence in the profession. It is this latter consideration to which the Hearing Committee turned primarily as a basis for its recommendation. It correctly deemphasized the discipline factors often relevant to other kinds of misconduct. Those factors are the protection of the public from generally incompetent or unethical lawyers, and deterrence by example. The Hearing Committee in addition correctly looked to the impact discipline would have on respondent's reputation (otherwise unblemished) and livelihood.

With these concepts in mind, we analyze the rationale of the Hearing Committee

---

2. One Board member recommended that we suspend respondent for three years.

(adopted by the Board) in arriving at its recommendation of a one-year suspension the Committee's conclusion assertedly was based on "the interest of the Court, the Bar, and the public." In relating those interests to the misconduct revealed, the Committee expressed its belief that discipline of lesser severity would undercut the seriousness with which it thought the Bar regarded this misconduct.

That misconduct occurred cannot be gainsaid, but exclusion from consideration of lesser levels of discipline must not be based on that factor alone, particularly since the recommendations before us appear to have been underpinned by punitive considerations. As the Hearing Committee noted, the Supreme Court of the State of Arizona considered the same conduct in a disciplinary proceeding and imposed censure by unanimous vote.[3] Whatever may be the force of respondent's argument that considerations of comity and avoidance of repetitive disciplinary proceedings require us to impose the same discipline, a point unnecessay to reach here, two aspects of the Arizona action are important to the question whether a one-year suspension here would be primarily punitive and hence inappropriate. First, Arizona is the original examination and admitting jurisdiction and the one from which respondent's career and reputation stem. Secondly, respondent remains in good standing in Arizona and can practice law there. Additionally, a three-judge committee of the United States District Court for the District of Columbia considered the same conduct by respondent, and concluded that no disciplinary action was warranted. Thus, protracted suspension by us merely would force respondent either to relocate his practice of law or make it purely "federal" in nature.

Accordingly, the view of the Hearing Committee that respondent should have a lapse period for reflection and self-examination lacks real significance, and the recommended suspension loses all but its punitive consequences. This is a case in which, comity to one side, relevant considerations point toward substantial consistency. Indeed, the Hearing Committee, though primarily if not exclusively concerned with erosion of public confidence in the Bar, expressed the judgment that from the viewpoint of the public, censure would not be deemed an inappropriate result.

Censure or a brief suspension cannot be deemed a tolerant attitude toward the misconduct in the case. These actions are a severe rebuke to a man of high professional standards, as the Committee otherwise viewed respondent. What is important is that the discipline imposed not have a punitive impact as its primary effect. That the Hearing Committee dwelt on punishment as a paramount purpose for recommending suspension is clear from its references to "penalties" and "appropriate punishment in disciplinary proceedings". (Report at 23.)

As the Committee itself acknowledges, a judgment in this case, as in any disciplinary matter, must be fair to the respondent and offer protection to the public if such is necessary. As did the Committee, we consider respondent's previous, unblemished and laudable record in private practice and public service.[4] In addition,

---

3. Our dissenting colleague dicusses at some length the minority views of a member of the Board of Governors of the State Bar of Arizona. The author of those views stated that he "would . . . have suspended Respondent for a short period . . . ."

4. It is noted that even in the matter of the ITT litigation respondent did not "drop" the case as he was ordered to do by the then-President. He was instrumental in seeking an extension of time to file a jurisdictional statement in the Supreme Court. Thus, the case was kept alive through the respondent's efforts, and it was subsequently settled in the best interest of the public.

The Committee characterized respondent's efforts in terms that he "acted upon the presidential directive by urging the Solicitor General to seek an extension of time . . . ." The Board, however, correctly observed that respondent "refused to carry out the [President's] order."

we find lacking any public purpose to be served in a one-year suspension as a mode of discipline. In this matter a criminal prosecution was brought; it became the appropriate vehicle for punitive determinations.[5] Any further attempt to punish in this proceeding inferentially would carry with it an implied expression of disagreement with the trial court's sentencing judgment, which would not be an appropriate consideration in our exercise of disciplinary judgment. Suspension for one year, thus seen as not serving a proper purpose in this proceeding, will not be imposed.

Recognizing that respondent is a man of high professional stature, with correspondingly high obligations, who was caught up in a "highly charged political atmosphere . . . when pressed by political opponents", to use the Board's words, we deem it appropriate to impose a suspension for a thirty-day period. The suspension shall begin on August 15, 1975, and at the expiration thereof respondent shall be deemed reinstated as a member of the Bar of this court.[6]

KELLY, Associate Judge, with whom FICKLING and GALLAGHER, Associate Judges, join, dissenting:

The court is unanimous in its concurrence with the Disciplinary Board's finding that respondent Kleindienst violated Disciplinary Rule 1–102(A)(4) by virtue of misrepresentations and dishonest conduct. My concurrence would also extend to the Board's finding that, contrary to Disciplinary Rule 1–102(A)(5), respondent engaged in conduct prejudicial to the administration of justice and to its recommendation that respondent be suspended from the practice of law in the District of Columbia for a period of one year.[1]

As our separate opinions make clear, the judge who heard argument in this case[2] recognize and appreciate the conscientious efforts of the Hearing Committee and the Disciplinary Board whose distinguished members were also unanimous in finding that respondent engaged in conduct patently inconsistent with the ethical standards to which members of our Bar are held.[3] In addition, they were virtually unanimous in their recommendation of disciplinary action commensurate with the gravity of respondent's misconduct, only one member being of the view that respondent should be suspended for a period of three years. Yet a majority of the court labors to find punitive underpinnings to the Board's disciplinary recommendation and somehow arrives at the conclusion that in this particular

---

5. With agreement of the Watergate Special Prosecutor, respondent, by a plea of guilty, was convicted of a violation of 2 U.S.C. § 192, a misdemeanor. A sentence of one month's imprisonment and a $100 fine was suspended, and respondent was placed on unsupervised probation for one month.

6. See In the Matter of John A. Shorter, Jr., D.C.C.A. No. S–31–75, Order dated July 7, 1975.

1. The Board found that respondent made direct and repeated misrepresentations in answering persistent inquiries respecting a matter being litigated by the Department of Justice. For purposes of this opinion it is not necessary to cite to the record these instances of misrepresentation and since the majority does not explain why it doubts respondent's conduct was prejudicial to the

administration of justice, or why it need not resolve the question, I do not pursue it.

2. Judge Yeagley recused himself from participation in this matter.

3. D.C.App.R. XI, Sec. 2, states in pertinent part:
The license to practice law in the District of Columbia is a continuing proclamation by the court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the court. It is the duty of every recipient of that privilege to conduct himself at all times, both professionally and personally, in conformity with the standards imposed upon members of the Bar as conditions for the privilege to practice law.

case a suspension of thirty days is appropriate.[4]

Initially, I am unable to follow the logic behind the conclusion of my colleagues that because the Supreme Court of the State of Arizona thought censure was the appropriate sanction to impose [5] and a three-judge committee of the United States District Court for the District of Columbia determined no disciplinary action was warranted,[6] the Hearing Committee's view that respondent would benefit from a period of reflection and self-examination lacks real significance and its recommendation to the Disciplinary Board loses all but its punitive consequences. My position is, simply, that considering the nature of respondent's proven misconduct, the Hearing Committee fairly and reasonably discharged its responsibilities in recommending the appropriate discipline to be imposed and there is no apparent reason of record why this court should not adopt that recommendation.[7]

The Hearing Committee scrupulously approached the issue of the proper disciplinary action merited by respondent's professional misconduct,[8] stating that:

Over the years, . . . court decisions, while reaffirming the breadth of

discretion, have nevertheless focused on a few salient considerations in determining the appropriate punishment in disciplinary proceedings. These are principally: the maintenance of the integrity of the profession in the eyes of the public, the protection of the public from unethical or incompetent lawyers, the deterrence of other lawyers from engaging in unprofessional conduct, and the serious impact that the disciplinary action may have on the reputation and the livelihood of an attorney. [Citations omitted.][9]

The Committee addressed the question of discipline, vel non, in light of its recognized responsibility to the court, to the Bar, and to the public. On the one hand, it expressed the belief that in this case it was especially important to ensure that public confidence in the integrity of the legal profession not be undermined. On the other, it acknowledged its clear obligation to respondent to weigh fairly the circumstances in mitigation of his misconduct, with specific reference to respondent's previously unblemished career at the bar and in public service, the actions of other tribunals which have evaluated respondent's misconduct in disciplinary terms, and the reasons which supposedly motivated respondent to testify as he did before a com-

---

4. D.C.App.R. XI, Sec. 4(3)(e), provides that the Board shall have the power and duty:
   To review the findings and recommendations of hearing committees and to prepare and forward its own findings and recommendations, together with the record of the proceedings before the hearing committee, to this court which shall review such findings and recommendations on the basis of the record and shall enter an appropriate order determining the proceeding.

5. The Board of Governors of the State Bar of Arizona voted eight to six (one member not voting) for censure. Three of the six in the minority indicated that they thought the punishment recommended was insufficient to fit the offense. The President of the Bar tended to agree, but voted for censure because otherwise it would have been impossible to reach a decision. *In the Matter of a Member of the State Bar of Arizona, Richard G. Kleindienst*, No. SB–60 (Sup.Ct.Ariz.1975).

6. *In the Matter of Richard G. Kleindienst*, Misc.No. 74–63 (D.D.C.1974).

7. I agree, of course, that this court may make an independent judgment on the nature of the discipline to be imposed. *E. g., Levine v. Comm. on Admissions and Grievances*, 117 U.S.App.D.C. 218, 219, 328 F.2d 519, 520 (1964).

8. D.C.App.R. XI, Sec. 3, provides that misconduct shall be grounds for:
   (1) Disbarment; or
   (2) Suspension for a period not exceeding five years; or
   (3) Public censure by the court; or
   (4) Private reprimand by The Disciplinary Board or an inquiry committee; or
   (5) Informal admonition by Bar Counsel.

9. Hearing Committee Number Three, Report to Disciplinary Board, Bar Docket No. 3–74B, at 23.

mittee of the United States Senate. Finally, in arriving at its recommendation of a one-year suspension, the Committee expressed its belief that "discipline of any lesser severity would undercut the seriousness with which the bar regards Respondent's misconduct." [10]

The majority focuses on the punitive aspects of the disciplinary recommendation, making an independent finding that no public purpose would be served by a one-year suspension. As the Committee stated, however, quoting from *In re Steinberg,* 269 P.2d 970, 975 (S.Ct.Wash.1954):

> It is not necessarily the purpose of suspension to imply that an attorney is unworthy of public trust during the period of suspension, and that thereafter he is again fit to follow his profession. Suspension carries with it an unavoidable punitive consequence, but *proportionately* it is the same unavoidable punitive consequence which results from reprimand or disbarment. It has the salutary effect of giving respondent . . . "a period for reflection and self-examination" which "may be of benefit to him." As we have pointed out before, the purpose of reprimand, suspension, and disbarment is the same. All are necessary parts of the overall process of discipline by which the courts maintain high standards of moral and professional conduct.

In support of its ultimate judgment the majority cites disbarment cases which advance the principle that legally, disciplinary action is not punishment. They rely, principally, upon words of Mr. Justice (then-Judge) Cardozo excerpted from the case of *In re Rouss,* 211 N.Y. 81, 84, 116 N.E. 782, 783 (1917).[11] There the question was whether disbarment is a penalty or forfeiture within the meaning of a penal

statute providing, *inter alia* that no person shall be excused from testifying in a conspiracy trial upon the ground that the testimony may tend to convict him of a crime or subject him to a penalty or forfeiture, but that having testified, such person shall not be subject to any penalty or forfeiture on any matter concerning which he did testify. Rouss claimed that because of this statute he was immune from discipline on charges of professional misconduct since he had testified in the trial of five police inspectors for conspiracy to obstruct justice through the suppression of the testimony of a witness. Rouss himself had participated in the arrangement to keep the witness without the state to avoid service of process and the testimony he gave at trial was in substance a confession of his own guilt. It is in this context that Justice Cardozo wrote, in rejecting this argument, that disbarment is not punishment. Indeed, he noted, Lord Mansfield had said as much in *Ex parte Brounshall,* Cowp. 829.

One is *punished* for a criminal act, as respondent has been by the former Chief Judge of the United States District Court for the District of Columbia who imposed sentence after entry of a plea of guilty to a violation of 2 U.S.C. § 192. Disbarment or disciplinary proceedings are not criminal proceedings, however, "notwithstanding they may have very serious and damaging consequences." [12] As Justice Cardozo noted, the statute in *Rouss* was a grant of amnesty, giving to Rouss the same protection as a pardon. "But a pardon, as we have seen, though it blots out penalties and forfeitures, does not render the courts impotent to protect their honor by disbarment." *In re Rouss, supra* at 784. Thus it would not be legally correct to say that respondent was being punished, as the majority uses the term, even if the Board had rec-

10. *Id.* at 25.

11. *In re Randolph,* 347 S.W.2d 91 (Mo.1961) (solicitation of personal injury cases through and splitting fees with laymen), and *In re Black,* 228 Or. 9, 363 P.2d 206 (1961) (so-

licitation of business and retention of runners), merely repeat this principle.

12. *Garfield v. United States ex rel. Stevens,* 32 App.D.C. 109, 140 (1908). *See also Booth v. Fletcher,* 69 App.D.C. 351, 355 n. 7, 101 F.2d 676, 680 n. 7 (1939); *In re Black, supra.*

ommended his disbarment. It is likewise incorrect to say that the discipline of a one-year suspension is primarily punitive or that the Hearing Committee "dwelt on punishment as a paramount purpose for recommending suspension . . . ."

In my judgment it is a thin reed upon which the majority relies in rejecting the recommendations of the Disciplinary Board of the District of Columbia Bar to which we have so recently, after much deliberation, entrusted the responsibility to discipline its own members. I find no justification in the record for such action and must, for the reasons given, disassociate myself from it.[13] I express the hope that the disposition in this proceeding will not be taken as an indication that the Bar is attempting to impose higher standards on its membership than the judiciary is willing to accept, for this one case would not justify any such conclusion.

I respectfully dissent.

---

13. In a similar case a suspension of three years has recently been imposed. *State ex rel. Nebraska State Bar Ass'n v. Cook* (Sup. Ct.Neb., 232 N.W.2d 120, 1975). There, in mitigation, the respondent had urged that "(1) He made an early and complete disclosure and thereafter fully cooperated with responsible authorities. (Attested by letter from the prosecutor.) (2) He is a relatively young man who occupied a sensitive position in a governmental agency, and was subject to the direction of persons senior to him in age and experience and closely identified with the highest civil authority in the nation. (3) His conduct was an isolated transgression involving essentially a single course of conduct in an otherwise unblemished career. (His record of previously high ethical standards as well as his present high legal competence is attested by witnesses and numerous letters from persons of good repute.) (4) He was motivated simply by desire not to injure Maurice Stans. (5) The office of the United States District Attorney, with whom the respondent cooperated, believed his cooperation with that office was complete and forthright. (Attested by letters from the United States District Attorney.) (6) Only two persons could testify as to what occurred in the conversations between Cook and Stans and, if Stans persisted in his version (as he did), Cook could have probably succeeded, had he so

ORDER

PER CURIAM.

On consideration of petitioner's petition for rehearing, it is

Ordered that petitioner's aforesaid petition is denied.

FICKLING and GALLAGHER, JJ., would grant petitioner's petition.

Separate Statement of Associate Judge GALLAGHER (joined by Associate Judge Fickling) :

I voted to grant a rehearing in this case for one reason. In its main thrust, the Petition for Rehearing does not seek to reopen the *Kleindienst* proceeding on the merits of the disciplinary action, nor do I. The Petition accepts the finality of the action taken there by a divided court, and so do I.

---

wished, in concealing the evidence from the government, but he did not seek to do so. (Attested by letter from the United States District Attorney.) Accordingly, he might have been better off if he had not admitted his involvement, which he nonetheless did to his personal detriment. (7) Cook cooperated without seeking or having been promised immunity on the charge of perjury. (Attested by letter from the United States District Attorney.) (8) He voluntarily resigned as Chairman of SEC. (9) The publicity and humiliation attended upon Cook's disclosures and resignation are, in themselves, substantial punishment. (10) His continuation in the practice of law does not, under the circumstances, constitute a risk to clients, the public, or the administration of justice. (11) The untruths, whatever they may have been, hurt no individual and did not result, and were not intended to result, in the obstruction of justice. (12) Certain other lawyers involved in recent national scandals have been lightly dealt with. (13) He did not seek to plea bargain with either the District Attorney or the Watergate Special Prosecutor's force, and decisions by those offices not to prosecute Cook either for perjury or conspiracy to obstruct justice were based respectively on policy consideration to encourage recantation and on the merits. (Attested by letters from those offices.)" *Id.* at 22–24.

But the Disciplinary Board—a creature and instrumentality of this court—is now asking this court for guidance as to procedure and legal standards to be applied in future disciplinary proceedings. And, frankly, I do not understand why this court has turned down this genuine request of its own Disciplinary Board.[1] If this court will not give the Board the guidance it seeks, there is no other place to get it. I will make a few observations, nevertheless, with the thought that the effort may not be entirely valueless.

I think the Board is essentially sound in the concepts it offers to this court on the relationship between the Disciplinary Board and its Hearing Committees (*see* p. 2–3 of the Disciplinary Board's Petition for Rehearing in this proceeding). While I would not suggest that all the trappings of administrative law be applied to disciplinary proceedings it seems to me that the relationship between a Hearing Committee and the Disciplinary Board is rather similar to the relationship between a hearing examiner and an administrative agency. I think, too, that in general terms the relationship between the Disciplinary Board and this court has a similarity to the relationship between an administrative agency and the appellate court.[2]

This court of course has final responsibility. But if the Board acts with fundamental fairness and reason, I think we should adopt its recommendations. We should "split hairs" with the Board neither in the matter of imposing a sanction nor in its severity. If it should at some time go beyond the bounds of essential fairness or reason, or displays a substantial lack of uniformity, it would be time for this court to step in. After all, one of the main reasons for the establishment of a Unified Bar in this jurisdiction, as well as others, was to enable the Bar to discipline itself—the expectation being that it would then impose and seek to enforce reasonably high standards on its membership. I believe this hope is generally being fulfilled.

Lastly, the Petition for Rehearing asserts the Disiplinary Board is apprehensive about the future impact of the majority's statement in this proceeding that

> What is important is that the discipline imposed not have a punitive impact as its primary effect.

The Board is concerned that every respondent may be able to show that the primary effect of any censure or suspension is its impact on his or her ability to practice law; and that they will characterize this effect as punitive. The Board asks that the majority's language be modified so this concept will not "[take] hold".

Of course suspension or disbarment of a lawyer has a punitive effect. It could hardly be viewed otherwise. But to say this is not to imply that a reasonable sanction is not aimed at generally accepted goals in considering appropriate punishment in disciplinary proceedings, these being outlined by the Hearing Committee in this proceeding:

> [T]he maintenance of the integrity of the profession in the eyes of the public; the protection of the public from unethical or incompetent lawyers; the deterrence of other lawyers from engaging in unprofessional conduct; and the serious impact that the disciplinary action may have on the reputation and the livelihood of an attorney.

1. The request naturally came in the procedural context of the case which brought to the surface the problems related to us.

2. The findings and recommendations of the Board's Hearing Committee, as well as the hearing record, are there to be examined by this court, as in administrative law, but it is the Board's finding and recommendation that we are essentially reviewing. There may be times when the Hearing Committees' findings and recommendation would have particular significance for this court. *Compare, e. g., Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

While the purpose of the *proceeding* is not to punish,[3] the imposition of a *suspension* or *disbarment* necessarily has the effect of punishment on the disciplined attorney.

Any extended discussion on this point would in all probability result in an academic exercise in semantics. It seems to me enough to say that if the Disciplinary Board, and its Hearing Committees, fairly and judiciously recommend a discipline where one is indicated I think they will find this course to have future approval. I believe the Disciplinary Board is mainly on the right track and I hope it stays there. There is no cause to be deterred.

---

3. *Ex Parte Wall*, 107 U.S. 265, 2 S.Ct. 569, 27 L.Ed. 552 (1882).