In re Donald E. COPE, a Member of the
Bar of the District of Columbia
Court of Appeals.

No. M–58–80.

District of Columbia Court of Appeals.

Argued Feb. 10, 1982.

Decided Jan. 24, 1983.

Joseph L. Mayer, Washington, D.C., for
petitioner, Bd. on Professional Responsibili-
ty.

Charles Kubinski, Washington, D.C., for
respondent.

Before KERN, NEBEKER and FERREN, Associate Judges.

KERN, Associate Judge:

The Board on Professional Responsibility has recommended that respondent, a practitioner for some 20 years with no prior disciplinary record so far as we are advised, be suspended from the practice of law for six months (a) for his neglectful conduct some four years ago in two criminal cases on appeal to this court, and (b) for his failure to cooperate in the investigation initiated by Bar Counsel as an aftermath of certain occurrences in this court during the two appeals.

The Board adopted the findings of fact of its Hearing Committee entered some six months after the hearing at which Bar Counsel and respondent had entered into a comprehensive stipulation of facts. Thus, the essential facts are not disputed. The background of the first count of the charges against respondent was that in 1977 he had represented one of two defendants in a robbery trial which ended in a guilty verdict. Respondent (and the attorney for the codefendant) noted an appeal on behalf of each of the two defendants. Respondent was appointed by this court to represent on appeal the defendant he had represented at trial. Respondent filed a brief 33 days after the date it was due without explanation, although he was directed to explain why the brief had been untimely filed. This court affirmed the judgment of conviction in July 1978 by an unpublished memorandum opinion and judgment.

The basis of the first count against respondent was his failure to communicate during the pendency of the appeal with the defendant he was representing. While he promptly advised his client of the fact that an appeal had been noted, he thereafter failed to respond to the client's inquiries from prison about the status of the appeal.[1] It was left to the Clerk of this court, responding to the appellant's letters, to keep him informed of the appeal's progress until its final determination adverse to him. The Clerk during this time transmitted a directive from a judge of this court to the respondent to enter into and maintain communication with the appellant. Respondent did not heed such directive.

Ultimately, by direction of a judge of this court, the Clerk forwarded his correspondence with the appellant to Bar Counsel who in August 1978 requested from respondent a statement on the matter of failing to respond to the client's inquiries during the appeal and also failing to explain why his brief was 33 days late.[2] When the respondent finally telephoned Bar Counsel in November and was told of the latter's concerns he declined to file a written statement. Whereupon Bar Counsel issued a subpoena directing him to appear with his files and respondent made his appearance (without the files) on November 27, 1978.

Almost one year later, in October 1979, a formal complaint was instituted against respondent. Respondent at the hearing held in February 1980 by the Hearing Committee acknowledged that he had been neglectful in not communicating with his client and in not abiding by the directives from a judge of this court (1) to explain why he had filed his brief 33 days out of time and (2) to maintain communication with the appellant.

In mitigation, he asserted that communicating with the appellant "would not have helped one iota" in the presentation of the appeal since the ground for such appeal was the allegedly improper and prejudicial summation by the prosecutor to the jury.[3] Re-

---

1. Apparently, the appellant was serving the remainder of a sentence under a prior conviction.

2. It is this court's practice to make available to Bar Counsel the fact of a failure on the part of an attorney to abide by directives issued by a judge on behalf of the court such as the directive to respondent to communicate with his client.

3. Respondent also asserted that, as a result of the trial, his relationship with his client "was bad to put it mildly." He realized in retrospect that he should have sought to withdraw from

spondent noted that his co-counsel on appeal (and at trial) had visited the other appellant who was also incarcerated and "would tell him what was going on." Respondent appeared to assume that the codefendants were in touch with each other at their place of incarceration.

As to his lack of response to Bar Counsel's request for explanation and information, respondent was of opinion that his representation on appeal had been effective and was therefore not a proper subject for review by Bar Counsel. Respondent also asserted that the files relating to the appellant were privileged and hence not properly subject to reach by the subpoena of Bar Counsel.

The Hearing Committee, in rendering its findings six months later, did not address any of the points raised by respondent in mitigation of his admitted neglect in not keeping his client informed during the pendency of the appeal. Rather, the Committee found his failure to communicate with his client constituted neglect of a legal matter entrusted to him. The Committee characterized his failure to explain why he had filed his brief 33 days later as conduct in which "he had recklessly disregarded a *ruling* of the District of Columbia Court of Appeals" (emphasis added); and, the Committee found that respondent had failed to produce his files pursuant to Bar Counsel's subpoena (without addressing respondent's point that the files were privileged until such time as the client charged ineffective assistance of counsel) and had failed to reply to repeated inquiries from Bar Counsel, all to the prejudice of the administration of justice.

The background of the second count of the charges against respondent was that pursuant to a fee agreement he represented a defendant in the trial court who entered

pleas of guilty in two separate cases (one of them a robbery case) before two different judges.[4] The judge in the first case found appellant would benefit from treatment under the Federal Youth Correction Act but the judge in the second case found he would *not* so benefit and sentenced him to imprisonment. Respondent requested the second judge to reconsider but such motion was denied. Respondent then noted an appeal on the ground that the trial judge in the second case had abused his discretion in imposing an adult sentence when another judge had already found the appellant susceptible to Youth Act treatment.

The basis of the second count against respondent was his conduct subsequent to the noting of the appeal in the above case. Although respondent requested and was granted an extension of time until December 5, 1977, in which to file his brief, he failed to meet that due date. Two days before Christmas, a judge of this court directed respondent to file either an appropriate motion or a statement explaining why he had failed to file his brief. Within the time allotted by this directive, respondent filed a motion to remand the case to the trial court. This court denied the motion some four months later.

In June 1978 a judge of this court issued two separate directives: first, directing respondent to explain why he had filed no brief and second, directing respondent to show cause why he should not be replaced as counsel for the appellant and the matter referred to the Board on Professional Responsibility. In July, respondent filed a motion to withdraw in which he advised that in his opinion the appeal was frivolous. Thereupon, an order of this court was entered vacating respondent's appointment as counsel.[5] Thereafter, the matter was re-

the case once he had noted the appeal on behalf of his client at trial.

**4.** Respondent testified without contradiction that he was never paid by his client. Apparently, he did receive some payment for services

rendered on the appeal from so-called Criminal Justice appropriations.

**5.** Later, and after new counsel filed a brief, this court upon government motion *summarily* affirmed the judgment of conviction resting upon the appellant's guilty plea.

ferred to Bar Counsel who sought from respondent a written report and his files in this case. Appellant, taking the same position he had in the first case, declined to make his files available.

Respondent asserted in his defense at the hearing by the Committee on this count that the defendant had been aware that once he entered a plea of guilty before the trial court all grounds for appeal were waived, with the exception of a challenge to the legality of the sentence. Since the sentencing judge's finding of "no benefit" was a discretionary matter, respondent deemed the appeal to lack a colorable claim, although he had noted such appeal as a way of protecting his client. In respondent's view, only the trial court could vacate its sentence and order Youth Act treatment. Therefore, respondent asserted that he had moved this court to remand the case so that he could request the trial judge to reconsider his imposition of an adult sentence. Respondent acknowledged neglecting this court by failing to explain with a supporting memorandum why he had filed a motion to remand and by neglecting to explain to his client the actions he was taking. However, respondent asserted that his representation under the circumstances had been effective.

The Hearing Committee's ultimate findings on this count, made in its report of August 1980, were that respondent had neglected the case by failing to advise his client of his own "perceptions" as counsel and that he had damaged his client by failure to "properly present" the appeal. In addition, the Hearing Committee found that respondent had disregarded "a ruling of the District of Columbia Court of Appeals" and engaged in conduct prejudicial to the administration of justice by failing to cooperate with Bar Counsel and refusing to turn over his case file in response to Bar Counsel's subpoena.

The Hearing Committee recommended suspension for a year and a day but the Board reduced the proposed sanction to six months suspension. Respondent does not challenge the findings of fact entered by the Committee and adopted by the Board. Rather, he challenges the failure of the Committee and the Board to deal with the mitigating factors he advanced in his own defense and he also argues the undue severity of the sanction in view of his record of *pro bono* work and the absence of any prior disciplinary matters on his record.

██ We must accept the Board's recommended disposition unless it "would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." Rule XI, § 7(3) of the Rules of this Court Governing the Bar of the District of Columbia. We deem the Board's dispositions in *In re Whitlock,* D.C. App., 441 A.2d 989 (1982), and in *In re Guhring,* (No. M–71–82) (Memorandum Opinion and Judgment dated March 4, 1982), as fixing the parameters for the instant case since they involve conduct by an attorney similar to that of respondent. In *Whitlock,* the attorney appointed to handle two appeals in this court failed to take *any* action at all in their presentation beyond filing the notices of appeal, despite repeated warnings from this court. The attorney also failed to respond to inquiries from Bar Counsel until disciplinary proceedings had been instituted. The Board recommended six months suspension in each case to run *consecutively;* this court reduced the sanction for such neglect to suspension for only a total of six months.

In *Guhring,* the attorney was retained in a civil case in March 1978 for the purpose of obtaining a property settlement agreement and a divorce. A September deadline for the property settlement was fixed by her client but, despite the client's repeated requests, a draft agreement was not prepared for her by the attorney until September 1st. The client promptly returned the draft to the attorney with several suggested changes but it was not until the last week in October that she received back from her attorney a redraft of the property settlement agreement. Again, the client responded promptly with several proposed

changes and reminded the attorney of the need for prompt resolution. Between November 1978 and March 1979 the client made repeated efforts to communicate with the attorney to no avail. Finally, in March the client discharged the attorney and spoke with Bar Counsel.

The Board, in recommending the sanction of public censure in *Guhring,* noted that on two prior occasions the attorney had received private reprimands and on another occasion had been informally admonished by Bar Counsel—all for neglect. This court adopted the Board's recommendation and publicly censured the attorney.

The conduct of respondent in the instant case was less aggravated than had been the conduct of the attorney in *Whitlock* who was suspended for six months. Respondent at least pursued to finality the first appeal and took some action in the second appeal. In addition, respondent, unlike the attorney in *Guhring,* had no prior disciplinary record of neglect. On the other hand, the attorney in *Guhring,* so far as the record shows, was not obdurate with Bar Counsel and negligent with respect to directives from judges of this court. Therefore, viewing respondent's conduct in the light of *Whitlock* and *Guhring,* we could not regard the sanction of either public censure or of suspension for less than six months as tending toward inconsistent dispositions.[6] In view of our concerns about certain circumstances in the instant case, which we now detail, we conclude the Board should reconsider its recommendation, with particular reference to the *Whitlock* and *Guhring* cases.

■ The Hearing Committee introduced into this proceeding for the first time at the hearing its *own* evaluation of the legal competence of respondent as a relevant factor in determining the charges of neglect against respondent. First, the Committee evaluated respondent's fitness to practice law generally upon the basis of how he had presented his defense at the

hearing. Thus, the Committee's Report stated:

> Persons needing the assistance of legal counsel should not be exposed to the risks inherent in [respondent's] style of legal practice. Based upon the record of the hearing *and the Committee's own observation of [respondent] in this proceeding,* the Committee believes [respondent] is not at this time fit to practice law. (Emphasis added.)

We question whether the Committee should ever take into account a lawyer's performance at a disciplinary hearing in reaching a determination on the charges against him. Surely, at the very least, the dictates of Due Process require that he be given notice that his performance at the hearing is to be weighed as a factor in disposing of the counts formally charged against him. No such warning by the Committee is reflected in the record. Next, the Committee apparently took unto itself the responsibility of determining whether respondent had "properly" presented the second appeal in this case. While a complete failure by an attorney to represent his client—as was the situation in *In re Whitlock*—seems relevant to a determination of client neglect by an attorney we are not persuaded that the Board and its Hearing Committees should also undertake an evaluation of an attorney's effectiveness in presenting his appeal. The matter of effective representation by an attorney in presenting an appeal is a matter for determination by the court in the appeal rather than the Hearing Committee.

■ Next, we note that nowhere in the report of the Hearing Committee (or for that matter in the report of the Board) is there any reference to or consideration of the highly relevant and material fact that no prior disciplinary action had been taken against respondent during 20 years of practice and that such practice, according to him, included a considerable amount of *pro bono* legal service. Since the Committee chose to make respondent's style of legal

---

**6.** Prior to the hearing, respondent and Bar Counsel discussed the possibility of public cen-    sure as a disposition of the charges.

practice a factor in its determination, the Committee should have considered respondent's practice fully.

■ Next, neither the Committee (nor the Board) dealt specifically with the factors urged by respondent in mitigation of his conduct. In a proceeding of this importance and with relatively little factual controversy the Committee (and the Board) had the responsibility and should have addressed specifically respondent's contentions.[7]

■ Accordingly, under the particular circumstances here,[8] we remand this case to the Board for the purpose of enabling it to consider: (1) the concerns with the Committee's procedures which we have detailed and then to determine the impact of such procedures on the Board's recommendation and the need for a rehearing by another Committee, and (2) the respondent's record in light of the Board's proposal for public censure in *Guhring* and the court's disposition of the *Whitlock* case.[9]

*So ordered.*[10]

FERREN, Associate Judge, concurring in the result:

I agree that this case should be remanded to the Board for reconsideration in light of

*In re Whitlock,* D.C.App., 441 A.2d 989 (1982), including reference to mitigating factors proffered by respondent. *See id.* at 992. I cannot join in the opinion of the court, however, because it suggests more problems with the Hearing Committee and Board proceedings than are reasonably inferable from the reports before us.

First, the majority perceives that the Hearing Committee improperly "evaluated respondent's fitness to practice law generally upon the basis of how he had presented his defense at the hearing." *Ante* at 1361. I do not understand the Committee, in the excerpt quoted by the majority, to have done so. The reference to "the Committee's own observation of [respondent] in this proceeding," *ante* at 1361, strikes me more as a comment on respondent's demeanor as his own witness than on his competence at self-representation. While this distinction may not be clear cut, I think it is important that the court not strain—as I believe the majority does—to put a gloss on the Committee's words that is not clearly there. In short, I cannot agree that the Committee evaluated respondent's general fitness to practice law, in part, by grading his professional skills at the hearing itself.

7. In a somewhat analogous situation we adjured an administrative agency to "come to grips" and "to deal ... without slippage" with contentions advanced to it. *Kopff v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 381 A.2d 1372, 1384 (1977). When determining the right of a lawyer to continue practicing his profession, the Board and its Hearing Committees are similarly obliged to deal directly with contentions.

8. We note that formal disciplinary proceedings were not instituted in this case for almost a year after the events complained of. The Hearing Committee did not issue its report until August 1980 and the Board issued its Recommendation in December 1980—more than two years after the alleged misconduct. Our reference to the amount of time taken in this chronology is not to be taken as any criticism of the Committee or the Board. Indeed, it serves to point up the fact that the disciplinary process necessarily consumes time and to point up further the need for devising some method of protecting the public (and respondent practitioner) during the measured course of a disci-

plinary proceeding. Nevertheless, we do commend to the Board's attention upon remand respondent's assertion that he has engaged in substantial *pro bono* work over the years of his practice and suggest that it would not be amiss in this particular case to take account of respondent's practice since the events of the two appeals in 1978.

9. We are aware that the Board's recommendation in *In re Guhring,* had not been made at the time of the recommendation in the instant case.

10. Our concurring colleague believes that we in the majority "strain ... to put a gloss on the Committee's words that is not clearly there." We merely read what the Committee has written and faithfully report such words herein. The concurring opinion also taxes us with writing "disturbing dicta on the subject of client neglect." Our order of remand is designed not to disturb the Board but to ensure only that it address certain aspects of this case and its own prior decisions on the subject of client neglect.

Second, the Hearing Committee concluded that respondent "deliberately acted in a manner that resulted in prejudice and damage to his client by his failure to properly present an appeal to the District of Columbia Court of Appeals." I cannot agree with my colleagues that the Committee here was evaluating respondent's "effectiveness in presenting his [client's] appeal," *ante* at 1361, in the professional skills sense. Rather, the Committee was simply commenting on respondent's failure to follow court orders with respect to the appeal and otherwise to carry out the basics of his professional obligation.

Finally, I disagree with the following distinction my colleagues present:

> While a complete failure by an attorney to represent his client—as was in the situation in *In re Whitlock*—seems relevant to a determination of client neglect by an attorney, we are not persuaded that the Board and its Hearing Committee should also undertake an evaluation of an attorney's effectiveness in presenting his appeal.

*Ante* at 1361. In every case there will be an area of tactical judgment by the lawyer, on behalf of the client, that a disciplinary authority should not second-guess. *See In re Thorup,* D.C.App., 432 A.2d 1221, 1226 (1981). But there obviously can be defaults in basic professional responsibilities during the course of representation for which an attorney should be called to account. DR 6–101 (Failing to Act Competently). In evaluating neglect and related ethical violations, the Board on Professional Responsibility and this court should not limit the reach of the disciplinary process only to "a complete failure by an attorney to represent his client." *Ante* at 1361. The majority, in crafting the sentence containing this language, may not have intended to limit neglect inquiries so sharply; I hope not. But their language is worrisome. Because the length of the disciplinary reach into areas of attorney judgment is more directly presented in other cases pending before this court, I will not comment further on that subject here.

In sum, in remanding this case to the Board, the majority expresses several concerns which, I respectfully submit, are simply not reflected in the Committee and Board reports. And there is needless, disturbing dicta on the subject of client neglect.