**In re James D. HUTCHINSON, Respondent.**

**No. 85–53.**

District of Columbia Court of Appeals.

Reargued en banc May 15, 1987.
Decided Dec. 4, 1987.

John M. Bray, with whom Judah Best and Charles J. Landy were on brief, for respondent.

Michael S. Frisch, Asst. Bar Counsel, with whom Thomas H. Henderson, Jr., Bar Counsel at the time the brief was filed, was on brief, for petitioner, the Office of Bar Counsel.

Joan L. Goldfrank, Executive Atty., for Board on Professional Responsibility.

Before PRYOR, Chief Judge, MACK, NEWMAN, FERREN, BELSON, TERRY, ROGERS, and STEADMAN, Associate Judges, and NEBEKER, Associate Judge, Retired.[*]

TERRY, Associate Judge:

In this disciplinary case, the Board on Professional Responsibility ("the Board") found that respondent Hutchinson's untruthful testimony before the Securities and Exchange Commission (SEC) in February 1982 was conduct involving moral turpitude that adversely reflected on his fitness to practice law, in violation of Disciplinary Rule (DR) 1–102(A)(3); conduct involving dishonesty and misrepresentation, in violation of DR 1–102(A)(4); and conduct prejudicial to the administration of justice, in violation of DR 1–102(A)(5).[1] The Board also found that Hutchinson's disclosure of certain material non-public information relating to a tender offer, which resulted in a misdemeanor conviction under 15 U.S.C.

---

[*] Judge Nebeker was an Associate Judge of this court at the time of oral argument. His status changed to Associate Judge, Retired, on September 1, 1987.

**1.** DR 1–102(A) provides in part:
A lawyer shall not:
     * * * *
  (3) Engage in illegal conduct involving moral turpitude that adversely reflects on his fitness to practice law.
  (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
  (5) Engage in conduct that is prejudicial to the administration of justice.

§ 78ff(a) (1982) and 17 C.F.R. § 240.14e–3(d) (1983), amounted to "statutory fraud" and was therefore a separate violation of DR 1–102(A)(4). The Board recommended that Hutchinson be suspended from the practice of law for one year.

A division of this court held that the Board had erred in concluding that the conduct which served as the basis for his misdemeanor conviction amounted to "statutory fraud." After considering the nature of Hutchinson's disciplinary violations in light of all the relevant factors, the division rejected the recommended sanction of the Board and imposed instead a suspension of six months, relying primarily on *In re Reback*, 513 A.2d 226 (D.C.1986) (en banc), in which a six-month suspension had also been imposed. *In re Hutchinson*, 518 A.2d 995 (D.C.1986) (*"Hutchinson II"*).

Both Bar Counsel and the Board filed petitions for rehearing en banc, and on March 10, 1987, we entered an order granting those petitions and vacating the division opinion. *In re Hutchinson*, 521 A.2d 676 (D.C.1987). Having reheard the case en banc, we adopt the holding of the division that Hutchinson's misdemeanor conviction did not involve "statutory fraud." On the question of sanction, however, we now conclude that the appropriate sanction is a suspension for one year.

## I

Hutchinson was a partner in a large Washington law firm, where his specialty was pension law. His practice did not involve securities law, but he did trade extensively in securities on his own account.

On January 21, 1982, Hutchinson received a telephone call from a close friend, a California attorney named William Chadwick, who told Hutchinson that he believed a tender offer was about to be made for the Brunswick Corporation. Chadwick said that he had invested in Brunswick, recommended that Hutchinson invest in it also, and offered to split any profits or losses if Hutchinson decided to buy Brunswick stock. When Hutchinson pressed for details, Chadwick said that he believed he did not have inside information and that his broker had verified this. Chadwick told Hutchinson that his conclusions about Brunswick were based on cocktail-party conversations and on independent analysis by him and a friend, whose identity he did not then disclose.

Within five minutes after talking with Chadwick, Hutchinson purchased forty Brunswick call options. The next day he bought one hundred more options through the same broker and attempted (unsuccessfully) to buy yet another fifty through a second broker in Florida. He also decided to pass along the recommendation to invest in Brunswick to another friend, Robert Chaloupka. Hutchinson first tried to call Chaloupka on Friday, January 22, but he was unable to reach him until Monday morning, January 25. By then trading in Brunswick stock had been suspended, although Hutchinson did not know this at the time. Chaloupka never bought any Brunswick stock or options.

On Monday, January 25, the Whittaker Corporation publicly announced its takeover of Brunswick, and trading in Brunswick stock was temporarily suspended. On the same day, an SEC attorney called Hutchinson's office to ask whether his law firm represented either Brunswick or Whittaker. Hutchinson was out of the office, but through his secretary he later sent word to the SEC attorney that his firm represented neither company. On January 26 Hutchinson himself called the SEC attorney and confirmed this. During that call he was asked to participate in an informal SEC inquiry and to answer questions about his personal trading in Brunswick options, and he agreed to do so.

The next day, January 27, Hutchinson called Chadwick to tell him that he had agreed to testify before the SEC about his Brunswick trading. Chadwick then told Hutchinson, for the first time, that his information about Brunswick had come not from his own analysis or that of his broker but from Martin Cooper, an officer of a Los Angeles bank in charge of the Whittaker account (the unidentified "friend" mentioned in the first telephone call). Chadwick said that both he and Cooper would be

"sunk" if Hutchinson revealed their January 21 conversation to the SEC because the information from Cooper would undoubtedly be regarded as inside information, and trading on it would constitute insider trading, which is illegal. After some discussion, Hutchinson agreed to lie to the SEC about the nature and source of his information about Brunswick if he was asked about it.

Hutchinson was deposed under oath by the SEC staff on February 2, February 16, March 29, April 1, and April 30, 1982. At the first two meetings, at which he was not represented by counsel, Hutchinson denied that he had discussed his purchase of Brunswick options with Chadwick or with anyone other than his own broker and denied that he had recommended the purchase of Brunswick stock to anyone else. He also said that he first learned of the tender offer for Brunswick from his broker on January 25, the date of the public announcement by Whittaker of the takeover bid. He denied having had any information before January 25 that a tender offer might be made for Brunswick. He told the SEC investigators that his sudden interest in Brunswick had resulted from his own research in the financial press and his personal strategy of purchasing low-priced options on stock which had recently traded at or below the option price.

Sometime between February 2 and February 16, Hutchinson unsuccessfully tried to convince Chadwick to agree to let him tell the truth to the SEC. Finally, on March 12, Hutchinson met with Chadwick and Chadwick's attorneys, and all of them agreed that Hutchinson and Chadwick would both contact the SEC and tell the whole truth. After that meeting, Hutchinson for the first time retained his own counsel, who got in touch with the SEC and made arrangements for Hutchinson to correct and supplement his earlier statements.

At the depositions in March and April, Hutchinson recanted his prior testimony and testified truthfully about his conversations with Chadwick, his agreement with Chadwick to lie to the SEC, and his efforts

to relay the advice about Brunswick to Robert Chaloupka. In addition, on April 29, 1982, he voluntarily deposited all the profits he had made from trading in Brunswick options into an escrow account.

The SEC then brought a civil enforcement action against Hutchinson, Chadwick, and Cooper in the United States District Court for the Central District of California. In that proceeding, without admitting or denying the allegations in the SEC's complaint, Hutchinson agreed in a consent order to surrender the profits he had made (approximately $72,000) from his trading in Brunswick securities. This money was eventually distributed to other sellers of Brunswick options. The consent order, which was entered on July 15, 1982, also provided for certain injunctive relief against Hutchinson.

About a year later,[2] in the United States District Court for the District of Columbia, Hutchinson was convicted of a criminal violation of the federal securities laws. An information filed by the United States Attorney charged him with a misdemeanor under 15 U.S.C. § 78ff(a) (1982), the penalty section of the Securities Exchange Act of 1934 ("the 1934 Act"), and 17 C.F.R. § 240.14e–3(d) (1983), which, broadly speaking, prohibits the communication of inside information about tender offers. On July 28, 1983, Hutchinson pleaded guilty and was fined $10,000.

The subsection of the regulation which Hutchinson was charged with violating, subsection (d), does not prohibit the purchase or sale of securities. Rather, it makes unlawful the communication of "material non-public information relating to a tender offer to any other person under circumstances in which it is reasonably foreseeable" that the other person will purchase or sell securities in the company which is the subject of the tender offer. Thus the criminal case against Hutchinson was based not on his personal trading in Brunswick options (as was the civil action in the Central District of California) but on his communication to Chaloupka of the im-

---

**2.** Hutchinson resigned from his law firm as of December 31, 1982.

pending tender offer for Brunswick. Furthermore, Hutchinson was convicted and sentenced under that portion of 15 U.S.C. § 78ff(a) which permits only a fine as punishment when the defendant proves that he had no knowledge of the regulation he was violating.[3]

## II

On November 28, 1983, Bar Counsel filed a petition instituting formal disciplinary proceedings against Hutchinson. Some time before that, when a copy of the misdemeanor conviction was filed with this court, we ordered the immediate suspension of Hutchinson from the practice of law, concluding that he had been convicted of a "serious crime" within the meaning of Rule XI, section 15 of our Rules Governing the Bar.[4] Hutchinson moved for reconsideration, and after full briefing and oral argument, we granted the motion and ruled that the misdemeanor at issue was not *per se* a serious crime, so that immediate suspension of Hutchinson was not required under the rule. *In re Hutchinson,* 474 A.2d 842 (D.C.1984) (*"Hutchinson I"*). We remanded the case to the Board for further proceedings under D.C.Bar R. XI, § 15(5).

After an evidentiary hearing, a hearing committee of the Board concluded (1) that Hutchinson's trading in Brunswick securities did not violate any Disciplinary Rule; (2) that neither Hutchinson's communica-

tion to Chaloupka nor the misdemeanor conviction based on that communication constituted a violation of any Disciplinary Rule; and (3) that Hutchinson's false statements to the SEC lawyers amounted to (a) conduct involving moral turpitude that adversely reflected on his fitness to practice law, in violation of DR 1–102(A)(3),[5] (b) conduct involving dishonesty and misrepresentation, in violation of DR 1–102(A)(4), and (c) conduct prejudicial to the administration of justice, in violation of DR 1–102(A)(5).[6] The hearing committee recommended that Hutchinson be suspended from the practice of law for one year.

The Board adopted all of the hearing committee's conclusions as its own, with one exception. Contrary to the hearing committee, the Board ruled that Hutchinson had been convicted of what it called "statutory fraud," and that the conduct underlying the conviction amounted to a separate, additional violation of DR 1–102(A)(4). The Board also recommended a one-year suspension.

## III

■ Hutchinson asserts that the Board erred in its conclusion that DR 1–102(A)(4), which prohibits an attorney from engaging in conduct involving fraud, was violated by the conduct which led to his misdemeanor conviction. We agree.

In its report the Board stated:

> element of which, as determined by the statutory or common law definition of such crime, involves improper conduct as an attorney, interference with the administration of justice, false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a "serious crime."

**3.** 15 U.S.C. § 78ff(a) imposes criminal penalties for any willful violation of the 1934 Act (with an exception not pertinent here) "or any rule or regulation thereunder the violation of which is made unlawful or the observance of which is required under the terms of [the 1934 Act] ... but no person shall be subject to imprisonment under this section for the violation of any rule or regulation if he proves that he had no knowledge of such rule or regulation."

**4.** D.C.Bar R. XI, § 15 provides in pertinent part:
(1) Upon the filing with the Court of a certified copy of the court record ... demonstrating that an attorney has been found guilty of a serious crime as hereinafter defined, the Court shall enter an order immediately suspending the attorney.... Upon good cause shown, the Court may set aside such order of suspension when it appears in the interest of justice so to do.
(2) The term "serious crime" shall include any felony and any lesser crime a necessary

**5.** Because the finding of moral turpitude was unrelated to Hutchinson's criminal conviction, this case does not present the issue of whether he is subject to disbarment under D.C. Code § 11–2503 (1981). *See generally In re Colson,* 412 A.2d 1160 (D.C.1979) (en banc); *In re Kerr,* 424 A.2d 94 (D.C.1980) (en banc).

**6.** Hutchinson does not challenge the Board's finding that his untruthful testimony before the SEC violated these three Disciplinary Rules.

Whether Hutchinson knew it or not, his conversation with Chaloupka was *statutory fraud.* That is, federal law makes it fraud, even though Hutchinson may have actually and honestly believed he was acting lawfully. Since DR 1–102(A)(4) prohibits an attorney from engaging in conduct involving fraud, and since Hutchinson's communication with Chaloupka and his conviction *definitionally involved fraud,* we find a violation. [Emphasis added.]

Thus the Board held that Hutchinson's conduct violated DR 1–102(A)(4) because the crime of which he was convicted necessarily involved fraud. That ruling was flatly contrary to our decision in *Hutchinson I, supra.* In that case we refused to characterize the crime of which Hutchinson was convicted as a "serious crime"[7] precisely because it did *not* necessarily involve fraud or deceit. We held:

> Crucially, no intent of any kind is required in order to be convicted; a negligent communication is sufficient. Therefore, since the components of the definition of a serious crime relevant to this case are all intentional acts, such as fraud and deceit, and intent is not a necessary element of the crime of which respondent was convicted, respondent's offense cannot be deemed a serious crime under Rule XI, § 15(2).

474 A.2d at 845. The Board's conclusion that the conviction "definitionally" involved fraud is in direct conflict with *Hutchinson I.*

Bar Counsel argues that the Board's conclusion on this issue should be upheld because one of the elements of the offense to which Hutchinson pleaded guilty is the reasonable foreseeability "that the communication is likely to result in a fraudulent, deceptive, or manipulative act or practice in violation of the regulation." *Id.* at 844–845. This argument ignores the very next sentence in *Hutchinson I,* which said that "no intent of any kind is required in order to be convicted; a negligent communication is sufficient." *Id.* at 845. Furthermore, to violate DR 1–102(A)(4), the respondent himself, not someone else, must "[e]ngage in conduct involving ... fraud." The reasonably foreseeable consequence of the communication was not some further action by Hutchinson himself; rather, it was the anticipated conduct of the person to whom the disclosure was made—in this instance, Mr. Chaloupka.

Although he may have been suspicious, Hutchinson did not have actual knowledge that Chadwick's investment tip had an illegitimate source when he called Chaloupka and recommended that he invest in Brunswick. In fact, Hutchinson specifically asked Chadwick whether his advice was based on inside information, and Chadwick assured him that it was not. He did not learn otherwise until two days after his conversation with Chaloupka. The record also shows—indeed, there is no dispute—that Hutchinson had no knowledge of the regulation and therefore no knowledge that his communication with Chaloupka was unlawful. Without actual knowledge that the information he possessed was inside information, we conclude that Hutchinson's conduct in advising Chaloupka to purchase some of the Brunswick stock did not necessarily involve dishonesty, fraud, deceit, or misrepresentation. We therefore cannot accept the Board's conclusion that "[w]hether Hutchinson knew it or not, his conversation with Chaloupka was statutory fraud ... even though Hutchinson may have actually and honestly believed he was acting lawfully." On this point the hearing committee was correct. In the absence of affirmative proof of a fraudulent intent or state of mind, we hold that Hutchinson's misdemeanor conviction did not establish a violation of DR 1–102(A)(4).

## IV

■ Hutchinson strongly contests the one-year suspension proposed by the Board. He maintains that the Board did not sufficiently take into account the mitigating factors present in this case and that the Board's recommended sanction would foster a tendency toward inconsistent dis-

---

7. See note 4, *supra.*

positions for comparable conduct. He urges us to impose only a minimal suspension, if we decide that any suspension is warranted at all. We conclude that the appropriate sanction is a suspension for one year.

D.C.Bar R. XI, § 7(3), requires this court to "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." Although the rule makes clear that the choice of a sanction rests with the court, not the Board, it also directs us to give considerable deference to the Board's recommendation.

> [T]he rule endorses the Board's exercise of broad discretion in handing out discipline that is subject only to a general review for abuse in that discretion's exercise. The rule requires that we enforce a general sense of equality in the sanctions handed out, but it otherwise commands that we should respect the Board's sense of equity in these matters unless that exercise of judgment proves to be unreasonable.

*In re Haupt,* 422 A.2d 768, 771 (D.C.1980); *accord, In re Hines,* 482 A.2d 378, 386 (D.C.1984); *In re Smith,* 403 A.2d 296, 303 (D.C.1979).

"In order to determine what discipline is appropriate under the circumstances, we must assess [Hutchinson's] violations in the light of all relevant factors." *In re Reback, supra,* 513 A.2d at 231. Those factors include "the nature of the violation, the mitigating and aggravating circumstances, [and] the need to protect the public, the courts, and the legal profession," *In re Haupt, supra,* 422 A.2d at 771, as well as "the moral fitness of the attorney," to the extent that we can discern it. *In re Smith, supra,* 403 A.2d at 303. Ultimately, however, "[w]ithin the limits of the mandate to achieve consistency, each case must be decided on its particular facts." *In re Haupt, supra,* 422 A.2d at 771; *accord, In re Hines, supra,* 482 A.2d at 386; *In re Smith, supra,* 403 A.2d at 303. "In all cases, our purpose in imposing discipline is to serve the public and professional inter-

ests we have identified, rather than to visit punishment upon an attorney." *In re Reback, supra,* 513 A.2d at 231 (citations omitted).

Looking to the relevant factors in this case, we find the nature of the violation quite serious. Lying to an agency of the federal government is a felony under the laws of the United States, punishable by imprisonment for five years or a fine of $10,000, or both. 18 U.S.C. § 1001 (1982). Lying under oath, of course, is perjury. 18 U.S.C. § 1621 (1982); D.C.Code § 22–2501 (1981). It is also, obviously, a dishonest act. Lawyers have a greater duty than ordinary citizens to be scrupulously honest at all times, for honesty is "basic" to the practice of law. *In re Reback, supra,* 513 A.2d at 231 (citation omitted). The need to protect the legal profession is also significant here. Every lawyer has a duty to foster respect for the law, and any act by a lawyer which shows disrespect for the law tarnishes the entire profession. On the other hand, the need to protect the public and the courts is somewhat less important in this case, given the isolated nature of the incidents which constituted the misconduct and the fact that they were unrelated to any court proceeding. Hutchinson's moral fitness to continue to practice law does not greatly trouble us, for the record reveals not only that he is genuinely contrite but also that he has taken steps toward an understanding of the root causes of his behavior. Additionally, we see no aggravating factors in this case that would suggest a sanction greater than that which the violations themselves call for.

There are significant factors in mitigation, as the Board itself recognized. To begin with, Hutchinson has no prior disciplinary record. Since being admitted to the bar in 1968, he has had a distinguished career encompassing both government service and private practice. Just as a prior disciplinary record is a factor which may be considered in aggravation, *see In re Roundtree,* 467 A.2d 143, 147–148 (D.C. 1983), so may the absence of such a record be considered in mitigation. *See In re Reback, supra,* 513 A.2d at 233. The Board also observed that Hutchinson recanted his

false testimony of his own volition and that he voluntarily surrendered all profits from his illegal trading in Brunswick options. Finally, Hutchinson's disciplinary violations occurred at a time of marital crisis when he was emotionally dependent on his close friend Chadwick (who, the Board noted, was the author of the cover-up). In the ensuing months he not only was remorseful but sought psychiatric counseling.[8]

"Accepting the facts in mitigation as true," the Board nonetheless recommended a suspension for one year.[9] Its reasoning was as follows:

> Hutchinson engaged in reprehensible conduct. He lied to an official investigative body in order to shield himself and others from possible civil and criminal liability. And he lied not once but twice, with sufficient time between the incidents to allow him to reflect on the gravity of his actions. Every citizen must know that this is unacceptable behavior in a society that places a great premium —indeed, is founded—on voluntary compliance with the law. For a lawyer, whose training and practice should make him especially sensitive to the obligation of truthfulness in official investigations, to lie to an investigative body is inexcusable. Had Hutchinson been convicted of perjury or of false statements to a federal official, a conviction which these facts would likely support, he would surely be disbarred.

We share the Board's outrage and agree with its sentiments. We also agree that a one-year suspension would be consistent with sanctions rendered in prior disciplinary decisions, and that it is therefore appropriate here.

A majority of the division in *Hutchinson II* felt itself limited by the six-month suspension imposed in *In re Reback, supra,* and therefore ordered that Hutchinson likewise be suspended for six months. *See Hutchinson II, supra,* 518 A.2d at 1001. The court en banc, however, now concludes that *Reback* (which was also an en banc decision) was never intended to place a ceiling on the suspension to be imposed on an attorney who has engaged in dishonest conduct. Our task here is simply to resolve this case in a manner consistent with our past decisions, giving due deference to the recommendation of the Board. *See, e.g., In re Hines, supra,* 482 A.2d at 386; *In re Haupt, supra,* 422 A.2d at 771. Viewing *Reback* in this light, we find it distinguishable in at least two respects.

*Reback* involved two attorneys, Reback and Parsons, who agreed to represent a plaintiff in a divorce action. After filing a verified complaint, however, they neglected the case, and the complaint was eventually dismissed. When Reback and Parsons learned of the dismissal, they prepared another complaint identical to the first, and Reback falsely signed the client's name to it. The complaint, bearing this false signature, was then notarized and filed with the court. These actions violated DR 1–102(A)(4) and (5) (conduct involving dishonesty, fraud, deceit, or misrepresentation, and conduct prejudicial to the administration of justice), DR 6–101(A)(3) (neglect of a legal matter), and DR 7–102(A)(5) (knowingly making a false statement of law or fact). The en banc court in *Reback* concluded that a six-month suspension for both attorneys was the appropriate sanction.

At first glance, *Reback* bears some resemblance to the case at bar. Reback and Parsons committed a series of misdeeds (lying to a notary public and filing a complaint with a false signature) in order to avoid the potential consequences of an earlier misdeed (neglecting a legal matter). Similarly, Hutchinson lied to the SEC on two occasions to conceal an insider trading

---

**8.** Given the Board's acknowledgment of these factors, we find this case clearly distinguishable from *In re Cope,* 455 A.2d 1357 (D.C.1983).

**9.** Before the Board and the division, Bar Counsel urged that Hutchinson be suspended for three years. Now, however, Bar Counsel seeks only a suspension for a year and a day, which would require (unlike a suspension for a year or less) that Hutchinson demonstrate affirmatively, by clear and convincing evidence, his fitness for readmission to the bar after the suspension has run its course. *Compare* D.C.Bar R. XI, § 21(3) *with id.,* § 21(5); *see In re Harrison,* 511 A.2d 16, 18 (D.C.1986); *In re Roundtree,* 503 A.2d 1215, 1216–1217 (D.C.1985).

deal. In both cases, the attorneys hoped to cover up one impropriety by committing another. But Reback and Parsons' initial misconduct, though irresponsible and gravely negligent, was not criminal; they merely neglected their client's case, thereby causing it to be dismissed. Hutchinson's initial misconduct, on the other hand, consisted of trading for his own benefit on the basis of inside information about a tender offer and communicating that information to Robert Chaloupka. Each of these acts was a violation of federal law; *see* 15 C.F.R. § 240.14e–3(a), (d) (1983). In addition, as the Board noted in its recommendation, Hutchinson "lied not once but twice, with sufficient time between the incidents to allow him to reflect on the gravity of his actions."

Furthermore, Reback and Parsons' objective was to revive their client's case and restore it to the court's docket, which was not inherently improper and which would indeed have somewhat rectified their prior negligence. Hutchinson's actions, in contrast, had a totally illicit objective: to prevent the SEC from detecting an insider trading deal. His dishonesty was not intended to rectify a prior misdeed, as in *Reback*, but instead was designed to ensure the success of his illegal conduct. Had the deception worked, Hutchinson not only would have escaped punishment for relaying inside information to Chaloupka, but also would have retained a tidy profit of $72,000.

Although the division in *Hutchinson II* found *In re Wild*, 361 A.2d 182 (D.C.1976), distinguishable from the case at bar, the en banc court now concludes that it offers probably the closest parallel to this case on its facts. Wild, a vice president of Gulf Oil Corporation, was involved in making se-

cret, illegal campaign contributions totaling $100,000 out of corporate funds to the Committee to Re–Elect the President.[10] Although he acted out of fear of what would happen if he did not contribute money after being importuned by two cabinet officers, he also tried to prevent public disclosure of his illegal conduct. Eventually, however, he came forward voluntarily and cooperated completely with investigating authorities. Wild pleaded guilty to a misdemeanor charge of making improper campaign contributions and was fined $1,000. This court suspended him for one year from the practice of law.

Hutchinson, like Wild, pleaded guilty to committing a federal misdemeanor [11] and received a stiff fine. Both men succumbed to pressure from individuals who wielded a substantial amount of political or personal influence. Furthermore, by attempting to conceal their actions from public scrutiny, Hutchinson and Wild sought to guarantee the success of their misdeeds.[12] Eventually, however, they decided to come forward and tell the truth to the authorities. Although comparisons between cases are inexact at best, and "every case must turn on its own particular facts," *In re Hines, supra*, 482 A.2d at 386, there are enough similarities between the conduct of these two attorneys to persuade us that similar sanctions are warranted.

To support his argument for a short suspension, Hutchinson primarily relies on *In re Rosen*, 481 A.2d 451 (D.C.1984); *In re Kent*, 467 A.2d 982 (D.C.1983); *In re Keiler*, 380 A.2d 119 (D.C.1977); and *District of Columbia Bar v. Kleindienst*, 345 A.2d 146 (D.C.1975). Each of these cases is distinguishable from the case at bar.

**10.** The Committee to Re–Elect the President was the principal campaign organization seeking the re-election of President Nixon in 1972.

**11.** The statutes under which Hutchinson and Wild were prosecuted specified that a willful violation was a felony, but that other violations were misdemeanors. *See* 18 U.S.C. § 610 (1970) (repealed 1976) (barring political contributions by corporations); 15 U.S.C. § 78ff(a), *supra* note 3.

**12.** Although the Board found that Wild had violated only one disciplinary rule, as opposed to Hutchinson's three violations, this disparity is not significant here. The hearing committee found that Wild had violated three rules, but the Board, "since it found a clear violation of DR 1–102(A)(4)," deemed it "unnecessary to determine" whether his conduct breached the other two rules as well. *In re Wild, supra*, 361 A.2d at 183.

In *Rosen* we held that a thirty-day suspension was appropriate for an attorney who made three separate misrepresentations to a federal court, even though he had a record of prior disciplinary violations. Rosen, like Hutchinson, knowingly made these misrepresentations to conceal prior misconduct. But Rosen's conduct resulted from procrastination and lack of preparation, whereas Hutchinson's conduct was knowing and willful. In addition, Rosen was found to have violated only two disciplinary rules, whereas Hutchinson violated three. Since Hutchinson's misconduct was more serious than Rosen's, we believe his sanction should be more severe.

In *Kent* the attorney openly shoplifted merchandise from a department store, apparently trying to be caught. She was suspended for thirty days, primarily because her act was impulsive and isolated, because it was unrelated to the practice of law, and because she voluntarily sought psychiatric help for her behavior. Hutchinson's conduct in twice giving testimony which he knew to be false cannot be equated with Kent's "neurotic desire to be caught." 467 A.2d at 984. Furthermore, Kent had already undergone what amounted to a self-imposed suspension of more than two years. *See id.* at 985. Thus a heavier sanction is warranted in Hutchinson's case than in *Kent*.

In *Keiler* the attorney selected a partner in his own law firm to serve as an arbitrator in a labor dispute in which he represented one of the parties. The supposedly impartial arbitrator ruled in favor of Keiler's client without revealing his relationship with Keiler or his law firm. This court imposed a thirty-day suspension, even though we concluded that the attorney's conduct had perpetrated a fraud on the judicial system and compromised the administration of justice. The *Keiler* case is distinguishable in one significant respect: Keiler's conduct was reprehensible but not criminal, whereas Hutchinson's lying to the SEC under oath probably violated at least two criminal statutes, 18 U.S.C. §§ 1001 and 1621; see page 924, *supra.*[13]

The respondent in *Kleindienst*, in hearings before a Senate committee on his nomination to be Attorney General of the United States, lied to the committee about his involvement in certain antitrust litigation. This court rejected the one-year suspension recommended by the Board, imposing instead a thirty-day suspension. Although *Kleindienst* is somewhat analogous to the case at bar, it is also distinguishable. Kleindienst's disciplinary violation had already been the subject of proceedings in his home state of Arizona which had resulted only in a censure. The same act of misconduct had been the subject of a criminal prosecution in which Kleindienst had received a suspended sentence. In addition, a three-judge committee of the United States District Court for the District of Columbia had considered the same conduct by Kleindienst and concluded that no disciplinary action was warranted. None of these factors are present in the case at bar.

In any event, because we are sitting en banc,[14] we take this occasion to overrule *Keiler* and *Kleindienst* as controlling precedents on the issue of disciplinary sanctions. Insofar as it relates to sanctions, *Keiler* has always been a weak precedent. The choice of a sanction for Keiler's disciplinary violation was not even mentioned until the very last sentence of the opinion, 380 A.2d at 124, and then only in a statement that the court was adopting the recommendation of the Board. As for *Kleindienst*, it at least appears to be somewhat inconsistent with other decisions (*In re Wild*, for example), and Bar Counsel has felt obliged in a number of cases to try to distinguish it. To eliminate further confusion and uncertainty, we hereby overrule both *Keiler* and *Kleindienst* to the extent that they deal with the question of appropriate sanctions for disciplinary violations.

## V

For the foregoing reasons, we conclude that Hutchinson should be suspended from

---

**13.** We say "probably" because Hutchinson was never actually charged with such violations.

**14.** *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971).

the practice of law for one year for his disciplinary violations in this case. For 62 days, however, from January 7, 1987, the effective date of the suspension ordered in *Hutchinson II,* until March 10, 1987, the date on which that opinion was vacated, he was under suspension for those same violations. Accordingly, we subtract those 62 days from the one-year suspension which we now impose, leaving a remainder of 303 days.

It is therefore ORDERED that respondent, James D. Hutchinson, is suspended from the practice of law in the District of Columbia for a period of 303 days, effective 30 days from the date of this opinion. *See* D.C.Bar.R. XI, § 19(3).

NEWMAN, Associate Judge, concurring:

In my dissent in *In re Reback,* 513 A.2d 226, 234 (D.C.1986) (en banc), I made clear that I believed the six months' suspension imposed on Reback and Parsons was woefully inadequate; I thought the appropriate sanction was suspension for one year and a day. It was clear to me then that the inadequate sanction imposed in that case would come back to haunt us in future cases. In this case it does. The *en banc* court struggles to distinguish *Reback* to justify a greater sanction in this case. I decline to join in that struggle. The sanction in *Reback* was seriously deficient. A sanction here of a one-year suspension, however, is appropriate.

I specifically join so much of the opinion of the court as overrules *Keiler* and *Kleindienst* as controlling precedents on the issue of disciplinary sanctions.