609 A.2d 682 (1992)
In re David L. HERNDON, Respondent.
A Member of the Bar of the District of Columbia Court of Appeals.
No. 91-SP-430.
District of Columbia Court of Appeals.
Submitted May 12, 1992.
Decided June 5, 1992.
Before STEADMAN, SCHWELB and FARRELL, Associate Judges.
PER CURIAM:
In In re Herndon, 596 A.2d 592 (D.C. 1991) (Herndon. I), this court ordered respondent disbarred from the practice of law in the District of Columbia on the basis of a finding by the Board on Professional Responsibility, which we concluded was supported by substantial evidence of record, that respondent intentionally misappropriated client funds. DR 1-102(A)(4). The present matter is before us on a report and recommendation of the Board, submitted prior to respondent's disbarment, which again recommends that he be disbarred on the basis of dishonesty. Indeed, the Board points out that respondent was engaged in the present misconduct "[a]t precisely [the] same time" he received the Hearing Committee's recommendation of disbarment in the earlier case. The Board reasoned that although respondent's conduct in the present case, standing alone, would not merit more than suspension for a year, it was proper to "view the determination of appropriate discipline as though all pending matters involving the Respondent were before the Board simultaneously," citing In re Thompson, 492 A.2d 866, 867 (D.C.1985). The Board therefore concluded: "Since we have recommended that Respondent be disbarred in [Herndon I, supra], this additional violation, when added to the prior case, only strengthens our view that disbarment is appropriate."
The Board's report and recommendation was submitted to the court and the matter was placed on the argument calendar for September 16, 1991. However, at respondent's request it was removed from the calendar and he was directed to file any brief in opposition to the Board's recommendation within 40 days. Respondent did not comply with this order but instead moved to stay the filing of briefs and oral argument pending his filing of a petition for rehearing en banc and a possible petition for a writ of certiorari in the United States Supreme Court in Herndon I, supra. On November 12, 1991, we denied the motion for a stay and ordered that respondent's brief be filed within 10 days. On January 31, 1992, in view of the possibility that previous orders had been mailed to the wrong address, we reissued the November 12 order. On March 6, 1992, no brief having been filed, we directed that the matter *683 be scheduled for consideration on the report and recommendation of the Board alone unless respondent's brief was filed within 10 days. To this date respondent has not filed a brief, and on May 12, 1992, we ordered that the case be deemed submitted on the Board's report and recommendation alone.
The Board found that respondent had engaged in dishonesty, DR 1-102(A)(4), by his conduct and statements in connection with the sale of stock which he had pledged as security for loans he received from a former law partner but on which he later defaulted.[1] This finding is supported by substantial evidence in the record. D.C.Bar R. XI, § 9(g). With respect to sanction, as we have explained, the Board made no independent recommendation of disbarment but viewed the present conduct as strengthening the basis for its previous recommendation. We conclude it is likewise unnecessary for the court to decide the appropriate sanction for respondent's present conduct viewed separately: he has already been disbarred. It shall suffice that the Board's findings as to misconduct, which we have accepted, be published and made part of the record to be considered by the Board and the court in the event that respondent petitions for reinstatement.
So ordered.

APPENDIX

DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of DAVID L. HERNDON, Respondent.

Bar Docket No. 369-89

REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY
This case is before the Board on Professional Responsibility on Hearing Committee Number Five's Recommendation that Respondent be disbarred for violating DR 1-102(A)(4). That Rule bars conduct involving dishonesty, fraud, deceit or misrepresentation. The essence of the charge is that Respondent made false statements in the course of his efforts to sell stock he owned that was pledged as security on loans to Respondent which were in default.
This matter was heard on July 11, 1990, by the Hearing Committee. Bar Counsel introduced a series of exhibits and offered the testimony of one witness, J. Dapray Muir, who made the loan to Respondent on which the stock at issue was pledged as security. Respondent offered no exhibits, but testified on his own behalf. At the close of the evidence on the allegations of the Petition, the Committee conferred in executive session and reached a preliminary and non-binding determination that Bar Counsel had shown by clear and convincing evidence that Respondent violated DR 1-102(A)(4).
After that determination, Bar Counsel offered evidence of prior discipline, consisting of the Report of Hearing Committee Number One in Bar Docket No. 9-88, dated September 1, 1989 ("Report in 9-88"). That Committee found that Respondent violated DR 1-102(A)(4) in four respects, including two instances of transmitting checks drawn on closed accounts, and two instances of attempting to explain his conduct in connection with the handling of client funds. The Committee also found that Respondent violated DR 9-103(A) and 9-103(B)(3) by his action in not properly handling client funds, and it further found that Respondent intentionally misappropriated $11,500 of those funds. The recommendation of Hearing Committee Number One was that Respondent should be disbarred.
Respondent offered no evidence in mitigation. A post-hearing briefing schedule was set by the Committee. Before any brief was due, the Committee received the Board's Report and Recommendation in Docket No. 9-88, recommending disbarment.[1]
*684 After reviewing the record and post-hearing briefs, Hearing Committee Number Five concluded that Respondent had violated DR 1-102(A)(4) and recommended that Respondent be disbarred. Upon review of the record,[2] we have concluded that the Hearing Committee's findings on the violation is supported by substantial evidence. And, while we agree with the ultimate sanction recommended, we disagree with the Hearing Committee on the issue of the appropriate sanction to be imposed if this were the only active disciplinary matter pending against Respondent.

FACTS
In 1987, Respondent became a principal of a law firm established by J. Dapray Muir, Esq. For a brief time, Respondent and Mr. Muir practiced in the District of Columbia under the firm name of Muir and Herndon. In December of 1987, however, Mr. Muir and Respondent decided to terminate their association.
As part of the termination transaction, Respondent and Mr. Muir entered into a Settlement and Loan Agreement. By that Agreement, among other things, Mr. Muir loaned Respondent $27,500, and Respondent also agreed to pay Mr. Muir $6,986.68, which was his unpaid share of the operating expenses for the period they were associated. Promissory notes were to be executed to represent both obligations. Respondent and Mr. Muir also entered into a Stock Lien Agreement, by which Respondent was to deliver 350,000 shares of common stock in a client called Hitech Engineering Corp. to Mr. Muir as security for the loan and unpaid operating expenses.[3] The Stock Lien Agreement empowered Mr. Muir to sell the shares to satisfy the amounts due if they were not paid before January 1, 1988.
Respondent did not pay Mr. Muir the amounts due on the promissory notes, and Mr. Muir filed suit in the Circuit Court for Montgomery County to collect on them. Respondent filed an Answer to that suit, in which he raised as a defense that "The plaintiff [Mr. Muir] has defendants' stock in a publicly traded company as security for any amounts which may be owing and must sell such stock to set off any claim he might have against defendants." Respondent signed the Answer himself, as he apparently represented himself and his wife as defendants in the action. The Answer was dated July 18, 1989. The Hearing committee found and the record supports that finding, that the stock referred to in the Answer is the 163,510 shares of Hitech stock that Mr. Muir held as security on the promissory note.
Less than six weeks after the Answer was filed, Respondent informed American Securities Transfer, Inc. ("AST") that the certificates he owned "are lost," confirmed his request for replacement stock certificates, and explained that he requested "assistance as quickly as possible" so he could sell the shares.
AST responded, requesting that Respondent pay a premium charge for Blanket Lost Security Coverage and execute an Affidavit of Loss so the shares could be replaced. Respondent executed the Affidavit of Loss, and stated the following about why he no longer had the stock certificates: "When I moved my offices, I thorough [sic] out alot of things (over 2 years ago) and must have thrown out these by mistake." Respondent signed the Affidavit of Loss under oath before a Notary.
By letter dated September 19, 1989, Respondent informed Hitech of his intention to sell the stock. The attorney who handled Hitech's securities work, Anthony Parker, knew Mr. Muir and called him to tell him of Respondent's stated intention to sell *685 some Hitech stock, which Mr. Muir still held as security on the unpaid promissory note. Mr. Muir wrote to Hitech to inform it of the lien he held on the stock, and Mr. Parker wrote to AST to verify his instruction not to allow Respondent to sell the stock.
Respondent was unsuccessful in his efforts to sell the stock. Mr. Muir subsequently sold the stock, with Respondent's cooperation, as a set-off against judgments against Respondent on the promissory notes, but the proceeds of the sale fell substantially short of covering the full amounts owed to Mr. Muir. No other payment has been made on the judgments.
Respondent's defense before the Hearing Committee on the issue of intent was that he "forgot all about" pledging the stock as security and that "it was a mistake." The Committee found to the contrary. After having an opportunity to observe Respondent's demeanor during his testimony and to question him, the Committee found that Respondent was aware that when he tried to sell the Hitech stock, the certificates were held by Mr. Muir as security on loans that were in default. It also found that Respondent had no plausible explanation for how he could have forgotten that the stock was pledged as security. He knew less than six weeks earlier, when he filed the answer to Mr. Muir's suit in Montgomery County, that Mr. Muir had the stock certificates. Respondent admitted that he knew on July 18, 1989, when he filed the Answer, that the stock was pledged as security. Respondent attempted an explanation that he "threw that in" with other defenses as a "delay tactic," but the Committee found that inadequate to explain how he could have forgotten the status of the stock six weeks later when he started trying to sell it.[4]

Conclusions
The Committee concluded, and we agree, that Bar Counsel established by clear and convincing evidence the violation of DR 1-102(A)(4), which prohibits conduct involving dishonesty, fraud, deceit or misrepresentation, by making efforts, and statements in the course of his efforts, to sell the Hitech stock. His statements indicated that he owned but had lost the certificates, despite the fact that the stock was pledged as security on loans, the certificates were physically in the hands of the lender, and those loans were in default. These acts and statements involved dishonesty, fraud, deceit or misrepresentation, within the meaning of DR 1-102(A)(4). See In Re Schneider, 553 A.2d 206, 208-11 (D.C.1989) (violation of DR 1-102(A)(4) shown by material misstatement that Respondent intentionally made). Accord, In Re Hutchinson, 534 A.2d 919 (D.C.1987) (en banc); In Re Reback, 513 A.2d 226 (D.C.1986) (en banc).
Respondent, in defense, asserted that the conduct alleged in the Petition "had absolutely nothing to do with Respondent's practice of law." Strictly speaking, that is not correct. The stock was pledged as security on loan agreements that were integral to Respondent's separation from a firm in which he had practiced law. But even if the dishonesty and misrepresentations were completely unrelated to Respondent's legal practice, they would violate DR 1-102(A)(4). Rule XI of the District of Columbia Court of Appeals provides at Section 2.b.:
Acts or omissions by an attorney, individually or in concert with any other person or persons, which violate the attorney's *686 oath of office or the rules or code of professional conduct currently in effect in the District of Columbia shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship. (Emphasis added.)
See In Re Miller, 553 A.2d 201 (D.C.1989) (dishonesty relating to legal employment, not practice); In Re O'Neill, Bar Docket No. 502-82 (BPR April 29, 1985 (writing bad checks on personal account).[5]

Sanction
In considering the appropriate sanction to recommend in this matter, the Committee weighed the nature and number of the violations and their seriousness, whether there was dishonesty or other conduct demonstrating moral unfitness of the attorney, whether the record shows prior discipline and circumstances in mitigation, and the sanctions that have been approved in similar cases. See In Re Hutchinson, 534 A.2d 919, 924 (D.C.1987). Based on that review, the Committee recommended that, were this charge viewed standing alone, Respondent be suspended for 60 days without the requirement of a showing of fitness for reinstatement. We disagree.
Although the charge involves only a single episode involving dishonesty and misrepresentation, it is a serious one. It involved several dishonest statements by Respondent that he owned the stock he was trying to sell, including one under oath in an Affidavit of Loss. These statements were calculated to obtain an economic benefit for Respondent, to the detriment of Mr. Muir, while Respondent was in breach of his obligation to repay the loans and in litigation over that breach. This is the type of conduct involving dishonesty that tends to show the moral unfitness of an attorney.
Adding to that is Respondent's credibility generally. Respondent was not truthful in his testimony to the Committee, a factor that heightens concern about his fitness to practice. See In Re Addams, 579 A.2d 190, 199 (D.C.1990) (en banc) (citing conflicting explanations of conduct as an aggravating factor). It was clear to the Committee from Respondent's demeanor and conduct throughout the proceeding that he has not come to grips with the fact of the violation and its seriousness. We have no occasion to disregard this finding.
In mitigation, the dishonesty and misrepresentation here was not an abuse of a client relationship or of the system of justice. Respondent was not abusing his position as an attorney by this conduct, in contrast to cases such as In Re Reback, where the Court stressed the special seriousness of such abuse. See In Re Kennedy, 542 A.2d 1225 (D.C.1988). The Hearing Committee also found that Respondent cooperated with Bar Counsel in this matter.
The range of sanctions for a single act of dishonesty is from public censure to suspension for one year. We have reviewed these cases and conclude that, if this violation were standing alone, a suspension of one year with a required showing of fitness for reinstatement would be appropriate and consistent with the sanctions approved in prior cases. See In Re Hutchinson, supra (one year suspension)[6]; In Re McGough, No. 275-87 (B.P.R. Aug. 3, 1990) (6 months suspension and proof of fitness for reinstatement); In Re Greenspan, 578 A.2d 1156 (D.C.1990) (6 months suspension and proof of fitness for reinstatement).
This violation does not, however, stand alone. The overwhelming factor in recommending a sanction in this case is the record of past discipline. Pursuant to the directive in In Re Thompson, 492 A.2d 866 *687 (D.C.1985), that the Board must view the determination of appropriate discipline as though all pending matters involving the Respondent were before the Board simultaneously. Since we have recommended that Respondent be disbarred in No. 9-88, this additional violation, when added to the prior case, only strengthens our view that disbarrment is appropriate. Moreover, in that case, after extensive discussion of the violations and the sanctions that have been found appropriate in other cases, Hearing Committee No. 1 recommended that Respondent be disbarred. That Recommendation was served on Respondent on September 6, 1989. At precisely that same time, Respondent engaged in the conduct which we have today concluded violated DR 1-102(A)(4). The fact that Respondent engaged in this misconduct on the heels of that Report only adds to the reasons stated in our July 12 Report recommending disbarment.
BOARD ON PROFESSIONAL RESPONSIBILITY
 By: /s/ Jeffrey Freund
 Jeffrey Freund
April 9, 1991
All members of the Board concur in this Order except Mr. Williams, who did not participate.
NOTES
[1] The Board's findings and conclusions are attached as an appendix to this opinion.
[1] That was argued before the Court of Appeals on January 24, 1991.
[2] Although Respondent filed a one page exception to the Hearing Committee's Recommendation, he did not file a brief to this Board in support of that opposition. Under Board Rule 13.3, Respondent's failure to file a brief precludes oral argument, notwithstanding his request for one.
[3] Although the agreement called for delivery of 350,000 shares, only 163,510 shares were ever delivered, because Respondent did not receive the remaining shares from Hitech.
[4] Another sequence of events corroborates that conclusion. On September 25, 1989, Mr. Parker wrote to Bar Counsel to ask that Respondent's conduct be investigated. When contacted by Bar Counsel, Respondent wrote in reply that the matter referred to by Hitech's counsel "was straightened out the day after he wrote his letter." The legal assistant who handled this matter for the brokerage firm through which Respondent attempted to sell the stock, wrote to Bar Counsel and explained that after the clearance process for the stock sale was suspended, Respondent "maintained that he was the legitimate owner of the stock, and that Mr. Parker's charges were the result of an unspecified conflict between them." As late as September 28th, Respondent "still gave no indication that he had done anything wrong and said he intended to sell the stock through another brokerage firm."
[5] The fact that the conduct is unrelated to the practice may, however, affect the sanction. See page 13, infra.
[6] Although Hutchinson was suspended for only one year which, under the Rule then in effect, did not require a showing of fitness for readmission, the Board in that case concluded that no purpose would be served in requiring that showing as Hutchinson had already demonstrated a sufficient change in perspective as to meet a fitness requirement. Respondent has made no such showing here.